[No. G043544. Fourth Dist., Div. Three. Oct. 29, 2010.]

LUCY VUKI et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
HSBC BANK USA, Real Party in Interest.

**COUNSEL**

Law Offices of Moses S. Hall and Moses S. Hall for Petitioners.

No appearance for Respondent.

Severson & Werson, Suzanne M. Hankins, Jarlath M. Curran II and Jan T. Chilton for Real Party in Interest.

OPINION

**RYLAARSDAM, P. J.**—Lucy and Manatu Vuki lost their Buena Park home to foreclosure. The sale took place October 7, 2009, with their erstwhile lender, HSBC Bank USA (HSBC), as the buyer at the foreclosure sale. In early January 2010 the Vukis stipulated to entry of judgment in an unlawful detainer action (denominated a "Limited Civil" action) brought against them by HSBC. The stipulation provided for an immediate writ of possession, but allowed the Vukis to remain in the house until January 26, 2010.

However, the day before January 26, the Vukis filed for chapter 7 bankruptcy. It took HSBC just a little more than 60 days to obtain relief from the automatic stay, which it did on March 30, 2010. Six days after that, on April 6, 2010, the Vukis filed this state court action against HSBC for, among other things, statutory violation of Civil Code sections 2923.52 and 2923.53.

On April 9, three days later, they filed an application for a temporary restraining order seeking a stay of eviction. Three days after that, on April 12, the trial court denied the request for that restraining order. The eviction was thus free to proceed.

But then the Vukis filed this writ proceeding on April 16. On April 20 this court stayed the eviction pending further order. In particular, we wanted to consider the scope of Civil Code sections 2923.52 and 2923.53, a question of first impression. (All further undesignated statutory references will be to the Civil Code.)

We have now heard oral argument in this proceeding. Because of the importance of the statutory issues presented, we publish this opinion explaining the reasons we deny the requested writ. (See *Hecht, Solberg, Robinson, Goldberg & Bagley LLP v. Superior Court* (2006) 137 Cal.App.4th 579, 584 [40 Cal.Rptr.3d 446] [denying petition but issuing opinion "in an effort to clarify" law on issue]; *Greenlining Institute v. Public Utilities Com.* (2002) 103 Cal.App.4th 1324, 1326, 1329 [127 Cal.Rptr.2d 736] [same].)

In particular, we conclude that, unlike section 2923.5 as construed by this court in *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208 [110 Cal.Rptr.3d 201] (*Mabry*), neither section 2923.52 nor section 2923.53 provides any private right of action, even a very limited one as this court found in *Mabry*.

We also address a related question of the operation of section 2923.54. Subdivision (b) of that statute is clear that: "Failure to comply with Section 2923.52 or 2923.53 shall not invalidate any sale that would otherwise be

valid under Section 2924f." The Vukis, however, claim that the statute does not apply to lenders who themselves buy the property at foreclosure, i.e., to lenders who cannot claim the status of bona fide purchasers. This argument fails since any claim which the Vukis might have to invalidate the foreclosure sale based on sections 2923.52 and 2923.53 necessarily entails a private right of action which the statutes do not give them.

## DISCUSSION

1. *The Operation of Sections 2923.52 and 2923.53*

    a. *basic requirements for a loan modification program*

■ Section 2923.52 imposes a 90-day delay in the normal foreclosure process. But section 2923.53 allows for an exemption to that delay if lenders have loan modification programs that meet certain criteria. Before section 2923.52 was enacted, there was a minimum of three months from any notice of default until any foreclosure sale (§ 2924, subd. (a)(3)). After the enactment of section 2923.52, at least for certain loans, another 90 days must be included "in order to allow the parties to pursue a loan modification to prevent foreclosure." (*Id.*, subd. (a).) However, if lenders meet the requirements of section 2923.53, they are exempted from the 90-day delay imposed by section 2923.52.

Those requirements are set forth in subdivision (a) of section 2923.53. Readers should note the theme that the requirements are a matter of a general program, evaluated by regulatory commissioners:

"(1) The loan modification *program is intended* to keep *borrowers* whose principal residences are homes located in California in those homes . . . .

"(2) The loan modification *program targets* a ratio of the borrower's housing-related debt to the borrower's gross income of 38 percent or less, on an aggregate basis in the program.

"(3) The loan modification *program includes some combination* of the following features:

"(A) An interest rate reduction, as needed, for a fixed term of at least five years.

"(B) An extension of the amortization period for the loan term, to no more than 40 years from the original date of the loan.

"(C) Deferral of some portion of the principal amount of the unpaid principal balance until maturity of the loan.

"(D) Reduction of principal.

"(E) Compliance with a federally mandated loan modification program.

"(F) *Other factors that the commissioner determines are appropriate.* In determining those factors, *the commissioner may* consider efforts implemented in other jurisdictions that have resulted in a reduction in foreclosures.

"(4) When determining a loan modification solution for a borrower under the loan modification program, *the servicer seeks to achieve* long-term sustainability for the borrower." (Italics added.)

  b.  *application for an exemption*

■  Subdivision (b) of section 2923.53 sets forth the process by which a lender may obtain an exemption from an otherwise applicable 90-day delay. Everything in the exemption process, in short, is funneled through the relevant commissioner:

"(b)(1) A mortgage loan servicer *may apply to the commissioner for an order exempting loans that it services from Section 2923.52.* If the mortgage loan servicer elects to apply for an order, the application *shall be in the form and manner determined by the commissioner.*

"(2) Upon receipt of an initial application for exemption under this section, *the commissioner shall immediately notify* the applicant of the date of receipt of the application and shall issue a temporary order, effective from that date of receipt, exempting the mortgage loan servicer from the provisions of subdivision (a) of Section 2923.52. The temporary order shall remain in effect until a final order has been issued by the commissioner pursuant to paragraph (3). If the initial application for exemption is denied pursuant to paragraph (3), the temporary order shall remain in effect for 30 days after the date of denial.

"(3) Within 30 days of receipt of an initial or revised application, *the commissioner shall make a final determination on whether the application meets the criteria of subdivision (a).* If, after review of the application, the commissioner concludes that the mortgage loan servicer has a comprehensive loan modification program that meets the requirements of subdivision (a), the commissioner shall issue a final order exempting the mortgage loan servicer from the requirements of Section 2923.52. If the commissioner concludes that

the loan modification program does not meet the requirements of subdivision (a), the *application for exemption shall be denied and a final order shall not be issued.*

"(4) A mortgage loan servicer may submit a revised application if its application for exemption is denied." (§ 2923.53, subd. (b), italics added.)

### c. *enforcement of the statute*

Similar to subdivision (b), subdivisions (c) and (d) of section 2923.53 commit enforcement of the statute to the relevant commissioner. That particular commissioner is given legislative authority to issue regulations fleshing out the process set forth in sections 2923.52 and 2923.53:

"(c) *The commissioner may revoke* a final order, upon reasonable notice and an opportunity to be heard, if the mortgage loan servicer has submitted a materially false or misleading application or if the approved loan modification program has been *materially altered* from the loan modification program on which the exemption was based. *A revocation by the commissioner shall not be retroactive.*

"(d) The commissioner shall adopt, no later than 10 days after the date this section takes effect, emergency and *final regulations to clarify the application of this section and Section 2923.52*, including the creation of the application for mortgage loan servicers and requirements regarding the reporting of loan modification data by mortgage loan servicers." (Italics added.)

Along the same lines, section 2923.53, subdivision (h), makes enforcement a matter of losing a license: "(h) Any person who violates any provision of this section or Section 2923.52 shall be deemed to have violated his or her license law as it relates to these provisions."

### d. *public assessment*

Subdivision (e) of section 2923.53 sets forth requirements making the relevant commissioner report back to the Legislature on how the whole process is going, generally and throughout the state. Readers should note that the operation contemplates a sample for purposes of a report that does not even necessarily include every loan servicer. That is, the scope of the assessment process is one which is within the discretion of the relevant commissioner: "(e) Three months after the first exemption is issued pursuant to subdivision (b) by order of any commissioner specified in paragraph (1) of subdivision (j), the Secretary of Business, Transportation and Housing shall submit a report to the Legislature *regarding the details of the actions taken to*

*implement this section and the numbers of applications received and orders issued.* The secretary shall submit an additional report six months from the date of the submission of the first report and every six months thereafter. Within existing resources, *the commissioners* shall collect, from *some or all* mortgage loan servicers, data regarding loan modifications accomplished pursuant to this section and shall make the data available on an Internet Web site at least quarterly." (*Ibid.*, italics added.)

By the same token, subdivision (f) of section 2923.53 sets up a public informational system to determine who has exemptions and who does not: "(f) The Secretary of Business, Transportation and Housing shall maintain on an Internet Web site a publicly available list disclosing the final orders granting exemptions, the date of each order, and a link to Internet Web sites describing the loan modification programs."

###### e.   *the enforcing commissioners*

The definitions section of the legislation comes at the end of the statute. The most significant language here is that "the commissioner" is defined to include any one of three separate heads of executive branch departments:

"(k) For purposes of this section and Sections 2923.52 and 2923.54:

"(1) 'Commissioner' means any of the following:

"(A) The Commissioner of Corporations for licensed residential mortgage lenders and servicers and licensed finance lenders and brokers servicing mortgage loans and any other entities servicing mortgage loans that are not described in subparagraph (B) or (C).

"(B) The Commissioner of Financial Institutions for commercial and industrial banks and savings associations and credit unions organized in this state servicing mortgage loans.

"(C) The Real Estate Commissioner for licensed real estate brokers servicing mortgage loans." (§ 2923.53, subd. (k).)

###### f.   *analysis of the text*

The text of sections 2923.52 and 2923.53 stands in sharp contrast to that of section 2923.5, which was the subject of this court's decision in *Mabry, supra,* 185 Cal.App.4th 208. As the italicized language quoted above shows, sections 2923.52 and 2923.53, read together, create a structure much more resembling the regulatory structure over general insurance industry claims

practices that the Supreme Court held to be without a private right of action in *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58]. Enforcement of sections 2923.52 and 2923.53 is committed to regulatory agencies, which have implicit power to terminate the license of any company whose program is not in compliance. By contrast, in *Mabry*, nothing in the subject statute (§ 2923.5) suggested that its enforcement was committed to a regulatory structure, and the individual, case-by-case approach of the statute indicated otherwise. (See *Mabry, supra,* 185 Cal.App.4th at p. 219 ["the enforcement mechanism at hand, in direct contrast to the one in *Moradi-Shalal*, is one that strongly implies *individual* enforcement of the statute"].) Not only is there no express unmistakable private right to sue (see *Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 597 [113 Cal.Rptr.3d 498, 236 P.3d 346]), there is a virtually unmistakable intent *not* to allow a private right to sue.

## 2. *The Operation of Section 2923.54*

■ Section 2923.54 first imposes a requirement that a notice of sale give information about whether the servicer has, or has not, obtained an exemption from the 90-day delay provisions of section 2923.52. But then section 2923.54 makes clear that whatever else is the case as regards actual compliance or noncompliance with sections 2923.52 and 2923.53, it will not invalidate any otherwise valid foreclosure sale: "(b) Failure to comply with Section 2923.52 or 2923.53 shall not invalidate any sale that would otherwise be valid under Section 2924f." (§ 2923.54, subd. (b).)

The Vukis argue that there is an implied exception in section 2923.54's use of the word "otherwise" (as in "otherwise be valid under Section 2924f"). Their theory is that section 2924f only protects bona fide purchasers for value (BFP's), and in this case HSBC cannot be a BFP because it would have purchased the Vukis' home knowing of its own noncompliance with section 2923.52 or 2923.53.

The argument fails because, as shown above, any noncompliance with sections 2923.52 and 2923.53 is entirely a regulatory matter, and cannot be remedied in a private action. The statutory scheme contains no express or implied exceptions for any lender who buys property knowing that it may not have complied with sections 2923.52 and 2923.53.

## CONCLUSION

■ Because the Vukis' claim for relief against the impending eviction rests entirely on alleged violations of statutes which afford them no private

right of action, we need not address the additional argument made by HSBC that their stipulation for judgment in the unlawful detainer action is itself preclusive of their claim.

The stay of the eviction is hereby discharged. The petition for the requested writ is denied.

Moore, J., and Aronson, J., concurred.