Filed 5/24/13  Kitajima v. Mortgage Electronic Registration Systems CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| OSAMU KITAJIMA et al., | B236915 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. LC092283) |
| v. | |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael B. Harwin, Judge.  Affirmed.

Law Office of Nick A. Alden and Nick A. Alden for Plaintiffs and Appellants.

Dykema Gossett, Brian H. Newman and Vivian S. Lee for Defendants and Respondents.

_____

## INTRODUCTION

Plaintiffs and appellants Doctor Osamu Kitajima and Yoko Kitajima appeal a judgment of dismissal entered after the trial court sustained the demurrer of defendants and respondents Deutsche Bank National Trust Company (Deutsche Bank), First Franklin, a division of National City Bank of Indiana (First Franklin) and Mortgage Electronic Registration Systems, Inc. (MERS) to plaintiffs' first amended complaint (FAC) without leave to amend. The gravamen of the FAC is that defendants commenced and conducted nonjudicial foreclosure proceedings on plaintiffs' residential real property in Woodland Hills (the property) in violation of certain statutes and in breach of the deed of trust plaintiffs executed. We shall reject all of plaintiffs' arguments and affirm the judgment.

## FACTS[1]

Plaintiffs acquired the property in 1990. In March 2006, using the property as collateral, plaintiffs obtained a $632,000 loan from First Franklin. The loan was memorialized by a promissory note and secured by a deed of trust. The deed of trust named First Franklin as the "Lender," plaintiffs as the "Borrower," and Financial Title Company as the "Trustee." MERS was identified as the "nominee for Lender and Lender's successors and assigns," as well as the "beneficiary" under the security instrument.

The deed of trust further provided: "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's

---

[1] Because the principal issue on appeal is whether the trial court erroneously sustained the defendants' demurrer to the FAC, our summary of the relevant facts assumes the factual allegations in the FAC are true, but we do not assume the truth of the FAC's contentions, deductions or conclusions of law. (*Bower v. AT&T Mobility, LLC* (2011) 196 Cal.App.4th 1545, 1552 (*Bower*).) Many of the facts in our summary are based on documents recorded in the Los Angeles County Recorder's office and attached to the FAC. Generally, to the extent there is a conflict in the facts alleged in the body of the FAC and the attached exhibits, the exhibits take precedence. (*Tucker v. Pacific Bell Mobile Services* (2012) 208 Cal.App.4th 201, 210 (*Tucker*).)

successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."

The deed of trust also contained this statement about the promissory note plaintiffs executed in First Franklin's favor: "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the 'Loan Servicer') that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable law."

Additionally, the deed of trust provided: "Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located."

In August 2009, MERS executed and recorded an assignment of deed of trust. This document assigned First Franklin's interest in the deed of trust and promissory note[2] to Deutsche Bank, as Trustee for First Franklin Mortgage Loan Trust 2006-FF9, Mortgage Pass-Through Certificates, Series 2006-FF9 (the Trust).

---

[2] The language in this document regarding the assignment of the promissory note is not a model of clarity. After identifying the deed of trust by date and instrument number of the Los Angeles County Recorder's Office, the assignment of deed of trust states that "Assignor [First Franklin] hereby assigns unto the above named Assignee [Deutsche Bank, as trustee of the Trust], the said Deed of Trust . . . . [¶] To Have and to Hold the said Deed of Trust and Note . . . forever, subject to the terms contained in said Deed of Trust and Note." Although the term "Note" is not defined in the assignment of deed of trust, it is defined in the referenced deed of trust as the $632,000 promissory note executed by plaintiffs. Further, the assignment of deed of trust refers to the "Deed of Trust Having an original principal sum of [$632,000]." In our view, the only reasonable reading of the assignment of deed of trust is that it conveyed First Franklin's interest in both the deed of trust and promissory note to Deutsche Bank.

3

On March 22, 2010, T.D. Service Company recorded a notice of default and election to sell under deed of trust (notice of default). This document stated that plaintiffs were in default of their obligations under the promissory note, that they owed Deutsche Bank $59,202.65 as of March 26, 2010, and that in order to arrange for payment to stop nonjudicial foreclosure proceedings pursuant to the deed of trust, plaintiffs could contact Deutsche Bank at a certain address and telephone number.

Attached to the notice of default was a notice of default declaration executed by an employee of Home Loan Services, Inc., the "authorized agent for the mortgagee and/or beneficiary." This notice stated that the borrower was not contacted pursuant to Civil Code section 2923.5, subdivision (a)(2) "despite the due diligence" of the authorized agent. We shall discuss this notice in more detail *post*.

On May 4, 2010, Home Loan Services, Inc., "as servicer" for Deutsche Bank, recorded a substitution of trustee, naming T.D. Service Company as the trustee of the deed of trust in lieu of Financial Title Company. This document was executed on March 29, 2010, which is *after* the notice of default was recorded by T.D. Service Company.

On June 23, 2010, T.D. Service Company, as trustee of the deed of trust, recorded a notice of trustee's sale. This notice stated that plaintiffs were in default and that T.D. Service Company would hold a public auction of the property on July 13, 2010. Subsequently, the sale was postponed to January 14, 2011.

## PROCEDURAL HISTORY

On December 30, 2010, plaintiffs commenced this action by filing a complaint in superior court against T.D. Servicing Company[3] and Deutsche Bank, as trustee of the Trust. On the same day, plaintiffs filed an ex parte application for an order to show cause (OSC) regarding a preliminary injunction and a temporary restraining order (TRO) prohibiting the pending trustee's sale of plaintiffs' property. The trial court issued the TRO and an OSC, and scheduled a hearing on January 20, 2011. Plaintiffs' counsel,

---

[3]     T.D. Servicing Company is not a party to this appeal.

4

however, inadvertently did not appear for the January 20, 2011, OSC hearing. Consequently, the TRO was dissolved.

On January 28, 2011, plaintiffs filed another ex parte application for an OSC regarding a preliminary injunction and a TRO. The trial court issued the TRO and an OSC, setting a hearing for February 15, 2011. This hearing, however, did not take place because on February 14, 2011, the parties filed a stipulation and proposed order regarding the nonjudicial foreclosure proceedings. Under the stipulation, plaintiffs agreed to not seek a preliminary injunction and requested the trial court to dissolve the TRO. Defendants agreed that "pending the outcome of this case, they will not take any step to foreclose on the property." The trial court entered an order adopting the stipulation.

On February 28, 2011, Deutsche Bank and T.D. Service Company filed a demurrer to the complaint. Before a hearing on the demurrer was held, plaintiffs filed the FAC against MERS, Deutsche Bank, First Franklin and T.D. Service Company. The FAC purported to set forth causes of action for breach of contract, violation of statutory duties, unfair business practices and quiet title.

On June 24, 2011, Deutsche Bank, First Franklin and MERS filed a demurrer to the FAC on the ground that the pleading failed to state sufficient facts to constitute a cause of action. The trial court sustained the demurrer without leave to amend on August 12, 2011, and then entered a judgment of dismissal in favor of the demurring parties on August 25, 2011. Plaintiffs filed a timely notice of appeal of the judgment of dismissal.

## ISSUE

The issue in this case is whether the trial court erroneously sustained defendants' demurrer to plaintiffs' FAC without leave to amend and, if so, whether the court committed reversible error.

## DISCUSSION

1. *Standard of Review*

We review an order sustaining a general demurrer de novo to determine whether the pleading alleges facts sufficient to state a cause of action. (*SC Manufactured Homes, Inc. v. Liebert* (2008) 162 Cal.App.4th 68, 82.) "Regardless of the label attached to the

5

cause of action, we examine the complaint's factual allegations to determine whether they state a cause of action on any available legal theory." (*Doe v. Doe 1* (2012) 208 Cal.App.4th 1185, 1188; accord *Bower*, *supra*, 196 Cal.App.4th at p. 1552.)

" ' "We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and facts of which judicial notice can be taken. [Citation.] We construe the pleading in a reasonable manner and read the allegations in context. [Citation.]" ' [Citation.] However, we need not accept as true plaintiff's contentions, deductions or conclusions of fact or law." (*Maxton v. Western States Metals* (2012) 203 Cal.App.4th 81, 87 (*Maxton*).)

Additionally, if we conclude that the trial court erred, we cannot reverse the judgment unless plaintiffs show that the error was prejudicial. (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963 (*Century*).) "[W]e cannot presume prejudice and will not reverse the judgment in the absence of an affirmative showing there was a miscarriage of justice. (Cal. Const. art. VI, § 13; [Citations].)" (*Century*, at p. 963; accord (*Kyne v. Eustice* (1963) 215 Cal.App.2d 627, 635 [requiring affirmative showing of miscarriage of justice to reverse order sustaining a demurrer].)

2.      *Breach of Contract*

The first cause of action in the FAC is for breach of contract. The elements of a breach of contract cause of action are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff. (*Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.* (2004) 116 Cal.App.4th 1375, 1391, fn. 6.)

The FAC clearly sets forth facts showing the existence of a contract, namely the deed of trust. The FAC also alleges that plaintiffs "performed all conditions, covenants, and promises" required by the contract. Defendants argue that this allegation is "plainly false" as plaintiffs "admittedly stopped paying their mortgage loan years ago." Nothing in the body of the FAC, however, states that plaintiffs breached the contract by failing to

make the payments due under the promissory note.[4]  At this stage in the proceedings, we must accept the factual allegations in the FAC as true, however improbable they may be. (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1034.)

Defendants argue plaintiffs cannot claim they were in full compliance with their obligations under the promissory note because the notice of default, which is attached to the FAC, indicates that plaintiffs were in default and that there was a balance due in the amount of $59,202.65, as of March 26, 2010.  As a general rule, when there is a conflict between the facts alleged in the body of the complaint and the facts stated in an exhibit attached to the complaint, the facts in the exhibit take precedence.  (*Tucker*, *supra*, 208 Cal.App.4th at p. 210.)  Under this rule, the plaintiff cannot contradict the plain meaning of words of an attached document.  (See e.g. *Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627 [the court held that a signature card for bank account shows plaintiff's corporation, not plaintiff individually, was the customer].)

The FAC, for example, states that Commonwealth Land Title (Commonwealth) was the trustee named in the March 13, 2006, deed of trust attached to the FAC.  The attached deed of trust, however, states that Financial Title Company was the original trustee.  We assume for purposes of defendants' demurrer, that the trustee was Financial Title Company, not Commonwealth.  This is because where, as here, the language of a writing is unambiguous, its interpretation is an issue of law determined by the court. (*Iglesia Evangelica Latina, Inc. v. Southern Pacific Latin American* Dist. *of the Assemblies of God* (2009) 173 Cal.App.4th 420, 432-433.)

---

[4]      We note that the nothing in the *deed of trust* requires plaintiffs to make payments to a lender.  That obligation arises from the *promissory note*, which is not the "contract" plaintiffs base this cause of action upon.  The two agreements, however, form parts of one transaction and must be read and construed together.  (*Kerivan v. Title Ins. & Trust Co.* (1983) 147 Cal.App.3d 225, 230; Civ. Code, § 1642.)

The statement in the notice of default that plaintiffs were in default of their obligations under the promissory note is different. Although it cannot be disputed what the document states, the document does not conclusively establish that plaintiffs were in breach of their contract at the time the notice of default was recorded. At the pleading stage, in light of FAC's statement that plaintiffs performed all of their obligations under the contract, we must assume that T.D. Service Company *claimed* that plaintiffs were in default, and that plaintiffs denied that claim.[5]

We now turn to the third element of this cause of action—defendants' breach of the contract. The FAC states: "In breach of the terms of the Deed of Trust, [T.D. Service Company], as agent for the beneficiary, recorded a Notice of Default before it was duly appointed as Trustee." This is the sole purported breach of the contract contained in the FAC.

The FAC does not state sufficient facts to constitute a breach of contract cause of action against MERS. Under the plain terms of the deed of trust, MERS is a separate corporation and the nominee the Lender, which in essence means an agent of the Lender. (*Fontenot*, *supra*, 198 Cal.App.4th at p. 270.) MERS had no power to act in its own right. (*Ibid.*) There are no facts alleged in the FAC indicating that T.D. Service Company was an agent of MERS. Accordingly, T.D. Service Company's act of recording the notice of default cannot serve as the basis for holding MERS liable for breach of contract.

---

[5] Because the notice of default was recorded in the official records of the County of Los Angeles, we can take judicial notice of the fact that it was recorded, the date it was recorded and executed, the parties reflected in the document, and the document's legally operative language, assuming there is no genuine dispute regarding the document's authenticity. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 265 (*Fontenot*).) We cannot, however, take judicial notice of the truth of statements of fact recited within the document. (*Id.* at p. 265, citing *Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1117-1118.) Accordingly, we cannot take judicial notice of the truth of the statement that plaintiffs were in default at the time the notice of default was recorded.

8

As the trustee of the deed of trust, T.D. Service Company acted as a limited common agent for the plaintiffs, as trustors, on the one hand, and First Franklin or Deutsche Bank, as the beneficiary, on the other.[6] (*Vournas v. Fidelity Nat. Tit. Ins. Co.* (1999) 73 Cal.App.4th 668, 677.)  Under this agency relationship, T.D. Service Company's duties were:  "(1) upon default [of the trustors] to undertake the steps necessary to foreclose the deed of trust; or (2) upon satisfaction of the secured debt to reconvey the deed of trust."  (*Ibid.*)

As T.D. Service Company's alleged principal, First Franklin or Deutche Bank, can be held vicariously liable for T.D. Service Company's acts within the scope of its agency. (Civ. Code, § 2330.)  The FAC, however, does not allege any facts indicating that T.D. Service Company breached the terms of the deed of trust.

Plaintiffs argue that defendants breached paragraph 24 of the deed of trust, which provides that "Lender, at its option, may *from time to time* appoint a successor trustee to any Trustee appointed hereunder . . . ."  (Italics added.)  By appointing T.D. Service Company as a successor trustee when it did, First Franklin or Deutsche Bank did not breach the terms of paragraph 24.

Plaintiffs also argue that defendants breached paragraph 22 of the deed of trust, which provides:  "If Lender invokes the power of sale, Lender shall execute or cause Trustee to mail a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold.  Trustee shall cause this notice to be recorded in each county in which any part of the Property is located."  By recording the notice of default on March 22, 2010, T.D. Service Company and its principal did not breach paragraph 22.

---

[6]   Obviously, at the time T.D. Service Company recorded the notice of default, it was not acting as a limited agent for *both* First Franklin and Deutsche Bank, because Deutsche bank is the alleged assignee and successor of First Franklin.

9

T.D. Service Company's act of recording the notice of default before it was duly appointed as the trustee was not a breach of any of the terms of the deed of trust. The FAC thus fails to state sufficient facts to constitute a cause of action for breach of contract.

Our analysis of the facts in the first cause of action, however, does not end with this conclusion. The question we must determine is whether T.D. Service Company's act of recording a notice of default before it was appointed a trustee supports any cause of action, regardless of whether the FAC mislabeled it.

"California's nonjudicial foreclosure scheme is set forth in Civil Code sections 2924 through 2924k, which 'provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust.' " (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154.) This statutory scheme contemplates precisely the situation presented here. Civil Code section 2934a, subdivision (c) provides: "If the substitution [of trustee] is effected after a notice of default has been recorded but prior to the recording of the notice of sale, the beneficiary or beneficiaries or their authorized agents shall cause a copy of the substitution to be mailed, prior to, or concurrently with, the recording thereof, in the manner provided in Section 2924b, to the trustee then of record and to all persons to whom a copy of the notice of default would be required to be mailed by the provisions of Section 2924b. An affidavit shall be attached to the substitution that notice has been given to those persons and in the manner required by this subdivision."

The substitution of trustee in this case was recorded on May 4, 2010. This was after the notice of default was recorded but prior to the recording of the notice of trustee's sale, which occurred on June 23, 2010. Thus if defendants or their authorized agents timely mailed a copy of the substitution in the manner provided in Civil Code section 2924b, they fully complied with their statutory duties. The FAC does not allege any facts indicating that defendants breached the requirements of Civil Code section 2934a, subdivision (c). Accordingly, the FAC fails to state a cause of action based on T.D.

10

Service Company's act of recording the notice of default before it was duly appointed the trustee of the deed of trust. [7]

### 3. *Violation of Statutory Duties*

The second cause of action in the FAC is for violation of statutory duties. The FAC alleges that defendants violated two provisions of the statutory scheme governing nonjudicial foreclosures, namely former Civil Code section 2923.5, subdivision (a)(1) and Civil Code section 2924f, subdivision (b)(3). [8]

#### a. *Former Civil Code Section 2923.5, Subdivision (a)(1)*

Former Civil Code section 2923.5, subdivision (a)(1), which was applicable at the time the notice of default in this case was recorded, provided: "A mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to Section 2924 until 30 days after initial contact is made as required by paragraph (2) [9] *or* 30 days after

---

[7]    In *Fontenot* and *Calvo v. HSBC Bank USA, N.A.* (2011) 199 Cal.App.4th 118 (*Calvo*), the successor trustee of the deed of trust recorded a notice of default before it was duly appointed successor trustee. (*Fontenot*, *supra*, 198 Cal.App.4th at p. 263; *Calvo*, at p. 121.) In both cases, the Court of Appeal concluded that the trial court properly entered a judgment of dismissal after it sustained the defendants' demurrers without leave to amend. (*Fontenot*, at p. 260; *Calvo*, at p. 120.)

[8]    Additionally, the FAC alleges that defendants violated former Civil Code sections 2923.52 and 2929.53. Plaintiffs, however, make no arguments on appeal regarding these statutes, and thus forfeited any arguments relating to them. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 (*Paterno*) ["An appellate court is not required to examine undeveloped claims, nor to make arguments for parties"]; *Antounian v. Louis Vuitton Malletier* (2010) 189 Cal.App.4th 438, 455 (*Antounian*) ["an argument not raised in the opening brief is forfeited on appeal"].) In any case, former Civil Code sections 2923.52 and 2923.53 do not provide for a private right of action. (*Vuki v. Superior Court* (2010) 189 Cal.App.4th 791, 794 (*Vuki*).)

[9]    Former Civil Code section 2923.5, subdivision (a)(2) stated: "A mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." (Stats. 2009, ch. 43, § 1.) The current statutes replaces "mortgagee, beneficiary, or authorized agent" with the term "mortgage servicer." (Stats. 2012, ch. 86, § 4.)

11

satisfying the due diligence requirements as described in subdivision (g)."[10] (Stats. 2009, ch. 43, § 1; italics added.) A trustor (borrower) can maintain a private cause of action for a violation of former Civil Code section 2923.5, but the trustor's remedy is limited to obtaining a postponement of an impending foreclosure to permit the lender to comply with the statute. (*Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 214.)

The FAC alleges: "No one ever contacted Plaintiffs to discuss his financial situation and/or explore options to avoid foreclosure in the 30 days that preceded the recording of the Notice of Default." Plaintiffs contend that this factual allegation is sufficient to state a cause of action for violation of former Civil Code section 2923.5, subdivision (a)(1). We disagree.

The FAC does *not* allege that defendants failed to use "due diligence" to contact plaintiffs. Although plaintiffs claim in their opening brief that defendants failed "to ever call" plaintiffs, there is no such allegation in the FAC. The FAC merely alleges that "[n]o one every contacted Plaintiffs." Further, the FAC indicates that defendants in fact used due diligence. Attached to the FAC is a copy of the notice of default declaration executed by Home Loan Services, Inc., as the authorized agent for the beneficiary of the deed of trust. This declaration states facts that, if true, indicate defendants complied with the due diligence requirements of former Civil Code section 2923.5.[11]

---

[10] Former Civil Code section 2923.5, subdivision (g) provided: "A notice of default may be filed pursuant to Section 2924 when a mortgagee, beneficiary or authorized agent has not contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact the borrower occurred despite the due diligence of the mortgagee, beneficiary or authorized agent." (Stats. 2009, ch. 43, § 1.) This subdivision also described in detail what constitutes "due diligence" for purposes of the statute. The same material provisions are now found in Civil Code section 2923.5, subdivision (e). (See Stats. 2012, ch. 86, § 4.)

[11] The declaration states: "Contact with the borrower pursuant to California Civil Code Section 2923.5(a)(2) has not been made despite the due diligence of the authorized agent pursuant to California Civil Code section 2923.5(g), including (a) Mailing a first-class letter to the borrower(s) which included a toll free number to contact a HUD-certified housing counseling agency; (b) Attempting to contact the borrower(s) by telephone at the primary telephone number on file at least three times at different hours

12

The FAC does not allege that the facts stated in the declaration are untrue or that defendants failed to use due diligence in attempting to contact them. By merely alleging defendants did not contact them without alleging that defendants did not exercise due diligence in attempting to do so, the FAC does not state sufficient facts to constitute a cause of action under former Civil Code section 2923.5, subdivision (a)(1).

   b.  *Civil Code Section 2924f, Subdivision (b)(3)*

Civil Code section 2929f provides that before a nonjudicial foreclosure sale pursuant to a deed of trust can take place, at least 20 days before the date of sale, a notice of sale containing certain information must be posted in a conspicuous place on the property to be sold. (Civ. Code, § 2929f, subd. (b)(3).) The FAC alleges that T.D. Service Company failed to comply with the requirements of Civil Code section 2924f "by failing to give notice to the Plaintiff or post notice of Trustee's Sale on the property." The FAC seeks a declaration that in light of defendants' violation of Civil Code section 2924f, the notice of trustee's sale is "null and void."[12]

By August 2011, when the trial court held a hearing on defendants' demurrer to the FAC, plaintiffs' claim for declaratory relief was moot. At that time, there was no pending trustee's sale pursuant to the notice of trustee's sale recorded on June 23, 2010, or otherwise.

---

on different days or determining that the primary and secondary phone numbers on file were disconnected; and (c) Having received no response from the borrower(s) via certified mail, with return receipt requested."

[12] The FAC also alleges that as a result of defendants' alleged violation of Civil Code section 2924f, plaintiffs suffered damages, including "severe emotional distress." Plaintiffs, however, did not provide any argument or legal authority to support this allegation in their appellate briefs. They have thus forfeited any argument that the demurrer should have been overruled based this allegation. *Paterno*, *supra*, 74 Cal.App.4th at p. 106; *Antounian*, *supra*, 189 Cal.App.4th at p. 455.)

Moreover, defendants could no longer conduct a trustee's sale pursuant to the notice of trustee's sale recorded on June 23, 2010. Under Civil Code section 2924g, subdivision (c)(1), a trustee's sale can be postponed "at any time prior to the completion of the sale for any period of time not to exceed a total of 365 days from the date set forth in the notice of sale." The notice of trustee's sale in this case scheduled the trustee's sale on July 13, 2010. Thus by August 2011, defendants were required to record a new notice of sale in order to complete a nonjudicial foreclosure of plaintiffs' property. (Civ. Code, § 2924g, subd. (c)(2)["In the event that the sale proceedings are postponed for a period or periods totaling more than 365 days, the scheduling of any further sale proceedings shall be preceded by giving a new notice of sale in the manner prescribed in Section 2924f"].)

By the time the trial court heard the demurrer, a judicial declaration regarding whether defendants complied with Civil Code section 2924f by posting the notice of trustee's sale on plaintiffs' property was an issue of no legal consequence. The trial court therefore correctly sustained defendants' demurrer to the FAC to the extent it was based on defendants' alleged violation of Civil Code section 2924f.

   c. *Civil Code Section 2924g, Subdivision (d)*

Civil Code section 2924g, subdivision (d) provides: "The notice of each postponement [of a trustee's sale] and the reason therefor shall be given by public declaration by the trustee at the time and place last appointed for sale." (Civ. Code, § 2924g, subd. (d).) In their opening brief, plaintiffs allege that the foreclosure sale was repeatedly postponed "without giving Plaintiff any notice." The FAC, however, does not allege any facts indicating that defendants failed to comply with the notice requirements of Civil Code section 2924g. In any case, plaintiffs concede that at this time there is no scheduled sale. Thus any previous alleged failure by defendants to provide notice of a postponement of a nonjudicial foreclosure sale cannot be the basis for a cause of action at this time.

14

4. *Unfair Business Practices*

     a. *The FAC Fails to Allege Actionable Violations of California Law*

The third cause of action in the FAC is for unfair business practices in violation of Business and Professions Code section 17200. This claim is based on six different acts that plaintiffs contend are violations of California law. The first is T.D. Service Company's act of recording the notice of default before it was duly appointed trustee of the deed of trust. As we explained *ante*, however, the FAC fails to state sufficient facts to support a claim based on T.D. Service Company's recording of the notice of default.

Next, the FAC alleges that, contrary to the notice of default declaration, plaintiffs "were not contacted in the thirty (30) days prior to the recording of the Notice of Default, received no first-class letter or certified mail, with return receipt requested." This argument misrepresents the contents of the notice of default declaration. The declaration states that plaintiffs were *not* contacted. Further, as we explained *ante*, the FAC does not state that defendants failed to exercise due diligence, and thus does not state a factual basis for plaintiffs' claim that defendants violated Civil Code section 2923.5.

The FAC alleges that notice of trustee's sale is defective in that it violated former Civil Code section 2923.53. As we explained *ante*, however, plaintiffs cannot base a private action on this statute. (*Vuki* , *supra*, 189 Cal.App.4th at p. 794.)

The FAC also alleges that Deutsche Bank had no authority to initiate the foreclosure because MERS "never possessed the promissory note" and did not have authority to assign the deed of trust to Deutsche Bank. We reject this claim. As nominee of the initial lender, MERS had authority to assign the promissory note and deed of trust, even if it lacked possession of the promissory note. (*Fontenot*, *supra*, 198 Cal.App.4th at p. 270.)

The FAC further alleges, based on "information and belief," that First Franklin "went out of business in 2008," and, "as a result, MERS no longer had the authority to act as its agent." This allegation is based on Civil Code section 2356, which provides: "(a) Unless the power of an agent is coupled with an interest in the subject of the agency, it is terminated by any of the following:

15

"(1) Its revocation by the principal.

"(2) The death of the principal.

"(3) The incapacity of the principal to contract."

Plaintiffs have not cited any authority, and we have found none, to support their contention that Civil Code section 2356 applies to a corporate entity, including a national bank association such as First Franklin. Further, the FAC's allegation that First Franklin "went out of business" is fatally vague and insufficient. It is unclear whether plaintiffs contend that First Franklin voluntarily dissolved (see 12 U.S.C. § 181), filed a petition for bankruptcy, or ceased to operate for some other reason. The FAC thus does not state sufficient facts to support plaintiffs' claim that MERS was no longer First Franklin's agent when it assigned the promissory note and deed of trust to Deutsche Bank.

Moreover, the deed of trust provides that MERS was not only First Franklin's nominee, it was also the nominee of First Franklin's "successors and assigns." The deed of trust also provides: "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender *and Lender's successors and assigns*) has the right to exercise any or all of those interests." (Italics added.) Accordingly, even if First Franklin was "out of business" at the time MERS assigned its interests in the deed of trust and promissory note, under the plain terms of the deed of trust MERS had the authority to make the assignment.

Finally, based on "information and belief," the FAC alleges that "[T.D. Service Company] Used a Robo Signers to execute the Notice of Default and the Notice of Trustee's Sale, including the declarations attached to them." This vague and factually devoid allegation does not support a cause of action. In any case, plaintiffs do not make any arguments in support of this allegation in their briefs, and thus forfeited the claim on appeal.

The FAC fails to alleges facts supporting any violations of California law or any other basis for an unfair business practices claim pursuant to Business and Professions Code section 17200.

16

b.     *Plaintiffs' Standing to Pursue an Unfair Business Practices Claim*

With the exception of certain government officials, a Business and Professions Code section 17200 claim can only be maintained "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." (Bus. & Prof. Code, § 17204.) To satisfy the "injury in fact" requirement a party must show that he or she suffered economic injury and that such injury was the result of, i.e., caused by, the unfair business practice. (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322.)

Defendants argue that plaintiffs lack standing to pursue an unfair business practices claim because the FAC does not allege facts indicating that plaintiffs have suffered injury in fact. We do not reach this issue because we hold that the FAC does not state sufficient facts to support an unfair business practices claim for the reasons stated *ante*.

5.     *Quiet Title*

The fourth and final cause of action in the FAC is for quiet title. The FAC alleges that plaintiffs seek to quiet title against the claims of MERS, Deutsche Bank, First Franklin, T.D. Service Company and all unknown persons "claiming any legal or equitable right, title, estate, lien, or interest in the property." In other words, plaintiffs seek to extinguish the deed of trust and promissory note. The FAC, however, states no facts indicating that plaintiffs have a right to do so. In particular, the FAC does not allege that plaintiffs have paid the amount due under the promissory note or made a tender to do so.

An action to quiet title is equitable in nature, governed by equitable principles. (*Mix v. Sodd* (1981) 126 Cal.App.3d 386, 390.) It is well established that under equitable principles, a mortgagor cannot maintain a quiet title action without first tendering or discharging his or her debt to the mortgagee. (*Ibid.*; *Shimpones v. Stickney* (1934) 219 Cal. 637, 649; *Aguilar v. Bocci* (1974) 39 Cal.App.3d 475, 477-478; *Horton v. California Credit Corp. Retirement Plan* (S.D. Cal. 2011) 835 F. Supp.2d 879, 893.) The same equitable principles prevent a trustor of a deed of trust from maintaining a quiet title

17

action against a beneficiary, trustee, or nominee of the beneficiary without first tendering or discharging his or her secured debt.[13]  The FAC thus fails to state sufficient facts to constitute a quiet title cause of action.

Plaintiffs argue that the FAC states a quiet title action against Deutsche Bank because it alleges that MERS did not have possession of the promissory note or authority to assign the note to Deutsche Bank.  As we explained *ante*, however, this argument is without merit. The trial court correctly sustained defendants' demurrer to this cause of action.

6.  *Leave to Amend the FAC*

When a general demurrer is sustained, the plaintiff must be given leave to amend his or her complaint when there is a reasonable possibility that the defect can be cured by amendment.  (*Maxton*, *supra*, 203 Cal.App.4th at p. 95.)  "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

" 'To satisfy that burden on appeal, a plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." [Citation.]  The assertion of an abstract right to amend does not satisfy this burden.' [Citation.]  The plaintiff must clearly and specifically state 'the legal basis for amendment, i.e., the elements of the cause of action,' as well as the 'factual allegations that sufficiently state all required elements of that cause of action.' " (*Maxton*, *supra*, 203 Cal.App.4th at p. 95.)

---

[13]  The "tender rule" also applies to any action challenging a wrongful nonjudicial foreclosure but does not apply to an action seeking to enjoin a foreclosure sale.  (*Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1280-1281.)  In their quiet title cause of action, plaintiffs do not challenge a completed nonjudicial foreclosure or seek to enjoin a pending foreclosure sale.  Thus the cases defendants cite relating to the tender rule in wrongful foreclosure actions are inapplicable.

Here, plaintiffs argued in their reply brief that an issue on appeal is whether they were entitled leave to amend their FAC. Plaintiffs, however, did not describe in their brief how they would amend their FAC to cure its defects. We therefore decline to grant plaintiffs leave to amend because they have not met their burden of showing there is a reasonable possibility that the deficiencies in the FAC can be cured by amendment.

## DISPOSITION

The judgment is affirmed. Respondents are awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KITCHING, J.

We concur:

KLEIN, P. J.

ALDRICH, J.

19