Filed 11/18/14  Cortez v. JP Morgan Chase Bank CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JUANITA CORTEZ, | H037631 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 1-08-CV114484) |
| v. | |
| JP MORGAN CHASE BANK, N.A., | |
| Defendant and Respondent. | |

By this action plaintiff Juanita Cortez seeks reformation of certain instruments concerning title to, and encumbrances upon, a residence she has occupied since 1999. The gist of her complaint, as relevant here, is that in 2003, in the course of seeking to refinance the home, and with the knowledge of the lender, she transferred record title to her daughter with the understanding that it would be deeded back to her upon completion of the refinancing.  The daughter thereafter failed, and ultimately refused, to reconvey the property.  When she encountered financial difficulties, plaintiff sought to renegotiate the loan, but the loan servicer—defendant Chase Home Finance, LLC (Chase)—refused to recognize any ownership interest in plaintiff.  After certain proceedings in bankruptcy, plaintiff filed an amended complaint in this action against the daughter, Chase and Deutsche Bank National Trust Company (Deutsche Bank), as assignee of the loan, seeking to reform the 2003 title and loan documents to reflect what plaintiff contends was

the true intent of the parties, which was to reserve or restore plaintiff's ownership interest in the property. The trial court entered judgment on demurrer, holding that plaintiff's claims against Chase and Deutsche Bank were barred by the statute of limitations and that the facts constituting grounds for reformation were not stated with sufficient particularity. We have concluded that plaintiff has failed to allege or even allude to facts justifying her five-year delay in seeking to vindicate her rights. We will therefore affirm the judgment.

## BACKGROUND

Since a demurrer tests only the sufficiency of a complaint to *state* a cause of action or defense, the operative facts must be found within its four corners, subject to two exceptions: The court may consider facts of which it properly takes judicial notice, and it may consider other factual assertions by the pleader insofar as they may reflect upon his or her ability to amend the pleading to cure any defects found in it.

We are here concerned with the second amended complaint, in which plaintiff alleged that in 1999, she and her late husband purchased a property, which has been her principal residence ever since, on Calpella Drive in San Jose. In or around August 2003, plaintiff and her husband orally agreed with their daughter, defendant Anna Serrano, that they would convey the property to her to facilitate refinancing. Plaintiff would continue to live in the house and would "pay the mortgage payments, taxes, and other costs associated with maintenance." Serrano agreed to quitclaim her title back to plaintiff "when the refinancing was accomplished."

Plaintiff alleges that the lender in the anticipated refinancing, People's Choice Home Loan Inc. (People's Choice),[1] "knew of the foregoing refinancing arrangement"

---

[1] In this action plaintiff persistently refers to this entity as "Peoples Choice." It appears on all the loan documents, defendants' pleadings, and plaintiff's own bankruptcy pleadings, as the more grammatically conventional "People's Choice."

2

and "understood, intended and agreed that although for a time during and shortly after the refinancing of the Calpella property defendant Serrano would become the legal owner thereof, plaintiff was at all times the equitable owner; would be restored to full legal ownership by defendant Serrano once the new loan had been recorded and; [*sic*] plaintiff would become responsible to repay said refinanced loan as owner of the Calpella property. . . . [A]s servicer and trustee respectively for defendant People[']s Choice relating to this loan, defendants Chase and Deutsche Bank became bound by the understanding, intention and agreements of defendants People[']s Choice regarding plaintiff's status as legal and equitable owner of the Calpella property."

It appears from documents of which the trial court took judicial notice that on August 15, 2003, Serrano executed a deed of trust for $440,000 on the Calpella property, naming People's Choice as lender.[2] Serrano also apparently took a second loan, for $100,000, as reflected in a second deed of trust, also in favor of People's Choice.[3] Plaintiff and her husband conveyed the property to Serrano by grant deed on August 22, 2003.[4] All three of these instruments—the grant deed, the first deed of trust, and the second deed of trust—were recorded on September 9, 2003.

According to plaintiff, she asked Serrano "within several months of the refinancing" to convey the property back to her. Serrano acknowledged an intention to do so. But so far as the complaint shows, nothing further happened with respect to title until, on October 8, 2007, Serrano executed a grant deed deeding the property to herself

---

[2] The underlying note was not before the trial court, but is an exhibit to one of the bankruptcy filings of which plaintiff requests judicial notice on appeal.

[3] Although the second deed of trust is not clearly described in the complaint, the trial court took judicial notice of it at defendants' request in support of their demurrer to the first amended complaint.

[4] Neither party has made an issue of the apparent fact that the loan documents were executed a week before the deed conveying the property to Serrano.

and plaintiff as joint tenants. Plaintiff does not state when this deed was delivered or otherwise made known to her, but it was not recorded until March 13, 2008.

Meanwhile, plaintiff alleges, she had contacted defendant Chase, as "People[']s Choice[] loan servicer, . . . in an attempt to modify her loan and to avoid the Calpella property becoming further entangled in defendant Serrano's financial affairs." In March 2008, representatives of Chase advised her to "stop making the mortgage payments so that the Calpella property would be in default, which, they said, was a prerequisite to making an application for loan modification. Acting on this request, Cortez ceased making payments on the loan in 2008 and then made application to defendant Chase for a loan modification."[5]

In the meantime, according to the second amended complaint, a dispute had arisen between plaintiff and Serrano concerning a second property—a duplex on Skylark Drive in San Jose. Plaintiff alleges that she and Serrano agreed to purchase this property in July 2006 as a joint venture in which plaintiff would furnish a down payment of some $175,000—the proceeds from her sale of another property—and Serrano would manage the duplex while living in one of the units and paying all expenses of ownership. Title was to be jointly held, and until "May of [*sic*] July of 2008" plaintiff believed it was jointly held. Plaintiff alleges that she first learned otherwise in July 2008, but that cannot be correct, for she filed the original complaint in this action—alleging that Serrano had "failed and refused to execute a deed conveying a one-half interest in the [Skylark] Property to plaintiff"—on June 10, 2008.

---

[5] One of many chronological discrepancies in the complaint appears here: Plaintiff alleges that when Chase gave this advice it was acting as "loan servicer for defendant Deutsche Bank." But she elsewhere alleges that the loan was not assigned to Deutsche Bank until July 2008—four months later. In this instance the confusion may be understandable, since the assignment—of which the court took judicial notice in connection with an earlier demurrer—was executed on September 19, 2003, but not recorded until July 25, 2008.

4

In her original complaint plaintiff sought relief only in connection with the Skylark property. The record contains some indication that Serrano answered the complaint and cross-complained in July 2008. Apparently, however, further proceedings were stayed on March 22, 2009, when Serrano filed a bankruptcy petition.[6] Plaintiff alleges that she asked Serrano around that time to quitclaim the Calpella property to her, but Serrano refused. In February 2010, after initiating adversary proceedings in the bankruptcy court concerning her claims to both properties, plaintiff, through counsel, repeated her demand that Serrano quitclaim the Calpella property to her. Serrano replied that she would do so only if plaintiff would abandon her claims respecting the Skylark property.

In May of 2010, the bankruptcy court issued an order abstaining from adjudication of plaintiff's claims against Serrano. On June 10 the court granted relief from the automatic stay, freeing plaintiff to pursue her claims in state court insofar as they did not seek monetary relief. On June 22, plaintiff moved to file an amended complaint in this action, adding causes of action concerning the Calpella property and joining Chase and Deutsche Bank as defendants. In responding to Serrano's opposition to the motion, plaintiff's counsel explained that the reason for the amendments was that Chase had

---

[6] Plaintiff has requested that we take judicial notice of the petition and other matters, including the complaint and consent judgment in an action by the United States and various state governments against numerous financial companies including Chase. Except as we may expressly refer to certain documentary exhibits to the bankruptcy filings, we deny the request on the ground that the materials presented have no apparent relevance to any issue before us. The federal complaint and judgment, in particular, have no apparent tendency to show either that plaintiff has stated a cause of action for reformation against these defendants or that she can amend her complaint to do so. For similar reasons we reject plaintiff's contention that the trial court erred by denying judicial notice of a congressional subcommittee's report on "real property mortgage lending practices and their connection with mortgage backed securities . . . between 2004 and 2008." Plaintiff directs us to nothing in the reports having more than a peripheral bearing on any of the questions presented here.

"refused to deal with plaintiff on a loan modification workout without a particular written consent form from defendant, which defendant refused to give unless plaintiff dropped her lien claims on Skylark." The trial court granted the motion.

The resulting pleading—the first amended complaint—named Chase and Deutsche Bank in three causes of action. The first cause of action, directed to all defendants, was designated as one "To Reform Title To the Calpella Property." In it plaintiff alleged that Serrano orally agreed with plaintiff to place the property in her name for purposes of refinancing and to then restore title to plaintiff. She then alleged that, "[w]ithout knowledge of the true facts and in reliance on defendant Serrano's false representations," she "was deceived and misled" into transferring title. She further alleged that her reliance was justified and reasonable. Finally she alleged that despite a demand in March of 2009 that she restore title to plaintiff, Serrano had refused to do so. In the associated segment of the prayer, she sought "reformation of the grant deed to the Calpella property to reflect the true intent of the parties, which is that Cortez has sole legal and equitable ownership interest in the Calpella property."

In the ninth cause of action, also directed to all defendants, plaintiff sought to quiet title to the Calpella property against Serrano and any persons claiming through her. In the eleventh cause of action plaintiff sought declaratory relief against all defendants concerning both properties.

Chase and Deutsche Bank demurred to the three causes of action naming them. Plaintiff asserted no argument against the demurrer with respect to the ninth cause of action (quiet title). The trial court sustained the demurrer as to that cause of action without leave to amend on the ground that it was unopposed. The court also sustained the demurrer as to the first cause of action (reformation), with leave to amend, on the ground that it failed to state facts sufficient to constitute a cause of action. The court overruled the demurrer as to the eleventh cause of action (declaratory relief), explaining

6

that "[t]o be entitled to declaratory relief, a party need not establish that it is also entitled to a favorable judgment."

Plaintiff then filed the second amended complaint, which is the pleading now before us. It differed from its predecessor, most importantly, by including a paragraph to the effect that People's Choice had known of and acceded to the arrangement by which Serrano would temporarily take record title for purposes of securing refinancing, and would then reconvey title to plaintiff.**[7]** Defendants again demurred, asserting as grounds that (1) the first cause of action (reformation) failed to state facts sufficient to constitute a cause of action, in that it "fail[ed] to adequately allege either fraud or mistake as a basis for the requested reformation"; (2) the first cause of action was uncertain, in that it "fail[ed] to identify the grant deed or deeds as to which Plaintiff seeks reformation, how the language of the grant deed(s) is/are in error, and how said deed(s) should be reformed so as to reflect the alleged agreement of the parties"; and (3) the eleventh cause of action (declaratory relief) failed to state facts sufficient to constitute a cause of action, in that it "fail[ed] to allege any actual controversy between plaintiff and Defendants." The supporting memorandum included an argument that even if the complaint otherwise stated a cause of action for reformation, it "would be barred by the statute of limitations."

---

**[7]** Plaintiff alleged on information and belief "that defendant [*sic*] People[']s Choice knew of the foregoing re-financing arrangement between Cortez and Serrano. Plaintiff is further informed and believes and on that basis alleges that at all times herein defendant People[']s Choice understood, intended and agreed that although for a time during and shortly after the refinancing of the Calpella property defendant Serrano would become the legal owner thereof, plaintiff was at all times the equitable owner; would be restored to full legal ownership by defendant Serrano once the new loan had been recorded and; [*sic*] plaintiff would become responsible to repay said refinanced loan as owner of the Calpella property. Plaintiff is further informed and believes and on that basis alleges that as servicer and trustee respectively for defendant People[']s Choice relating to this loan, defendants Chase and Deutsche Bank became bound by the understanding, intention and agreements of defendants People[']s Choice regarding plaintiff's status as legal and equitable owner of the Calpella property."

7

In her opposition to the demurrer, plaintiff clarified that she sought reformation "in order to correct the identity of the title holder of the property and to correct and conform [*sic*] that plaintiff is a co-obligor on this loan." Later in her memorandum appeared the further explanation that "[t]he purpose of the First Cause of Action is to reform both the loan documents and any title documents in connection with the loan, in order to reflect that the true owner and the true primary borrower at the time of the loan was plaintiff."[8] The memorandum further stated that plaintiff "wants the title documents and loan documents reformed to reflect that at all times she held equitable title to the property, was the equitable owner thereof and was a co-borrower on the People[']s Choice loans in question. . . . While the prayer is incomplete as to the identification of each document that should be reformed relating to the title and the loan, the prayer of a complaint is not a part of a complaint that is susceptible to a demurrer. [Citation.]" Numerous restatements and elaborations on this theme appear.

With respect to the statute of limitations, plaintiff asserted that Serrano "kept promising to transfer the property between 2003 and 2008," and that it was only when Serrano deeded her a joint tenancy interest that she realized Serrano had no intention of performing the undertaking to reconvey fee title to plaintiff. She also noted that the limitations period was necessarily tolled while her claims were subject to the automatic stay that took effect when Serrano filed her bankruptcy petition on March 22, 2009.

Plaintiff stated that as to these defendants, her declaratory relief cause of action had been re-asserted in error, and could be stricken "based upon the *Vuki v. Sup. Ct.* (2010) 189 Cal.App.4th 791 case."[9]

---

[8] The memorandum then veered into the remarkable argument that Chase and Deutsche Bank lacked "standing to demur to these allegations." Thankfully, this argument is not pursued on appeal.

[9] In connection with her relinquishment of this cause of action plaintiff made yet another erroneous assertion, to wit, that the declaratory relief cause of action in the

8

The trial court sustained the demurrers without leave to amend and struck the eleventh cause of action "[a]t Plaintiff's request." In a written order the court reasoned that (1) the complaint alleged no wrongful conduct by which defendants Chase and Deutsche Bank could be estopped to assert the statute of limitations; and (2) plaintiff had failed to specify what instrument failed to reflect the parties' true intentions, or in what respects. The court entered a judgment of dismissal. This timely appeal followed.

## DISCUSSION

### I. Questions Presented

Insofar as defendants Chase and Deutsche Bank are concerned, plaintiff has explicitly abandoned all but her reformation cause of action. The trial court found that she failed to state facts sufficient to constitute such a cause of action in that (1) the claim was barred on its face by the statute of limitations and she had failed to plead facts in avoidance of the statute; and (2) she failed to specify what instrument she sought to reform, the manner in which she sought to reform it, or the grounds on which reformation was justified as against these defendants. The questions presented are whether the court was correct in finding the plaintiff fatally defective in either of these respects, and if so, whether it committed an abuse of discretion by not allowing plaintiff leave to amend.

### II. Statute of Limitations

Defendants contend, and plaintiff does not dispute, that the governing statute of limitations is Code of Civil Procedure section 338, subdivision (d), which prescribes a three year limitations period for "[a]n action for relief on the ground of fraud or mistake,"

---

predecessor complaint had been "successfully demurred to without leave to amend." In fact that demurrer was overruled. It is possible that this and other such misstatements are the product of counsel's confusing this matter with other cases he is handling. Certainly they appear inadvertent, since few if any of them appear calculated to improve plaintiff's position. Nonetheless it is incumbent on an attorney, as officer of the court, to employ methods and procedures sufficient to prevent making misstatements of fact—even inadvertently—to a court.

9

with the cause of action accruing upon "the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

The pertinent allegations, and matters ascertainable by judicial notice, are as follows: As part of the refinancing arrangement in the late summer of 2003, Serrano promised to reconvey title to plaintiff "when the refinancing was accomplished" or "as soon as the refinance transaction was complete." The refinancing was complete no later than September 9, 2003, when the relevant instruments were recorded.[10] Plaintiff asked Serrano "within several months of the refinancing" to convey title back to her, but Serrano failed to do so—although, the complaint alleges, she "initially acknowledged that she intended to do so." Four and a half years after the refinancing, in March 2008, Serrano recorded a deed granting plaintiff a joint tenancy in the property. About a year later, plaintiff asked Serrano to "correct[]" title to reflect plaintiff's exclusive ownership, but Serrano refused and, around the same time, initiated her bankruptcy proceeding. Sometime between then and April 1, 2010, plaintiff initiated an adversary proceeding concerning the Calpella property in bankruptcy court. So far as the present action is concerned, plaintiff first asserted the cause of action now before us on June 22, 2010, when she moved to amend the complaint to assert claims against Chase and Deutsche Bank.

It thus plainly appears that "within several months of the refinancing"—i.e., by the end of 2003 or early 2004—Serrano had failed to comply with a request to reconvey title, in manifest violation of her alleged promise to do so "as soon as the refinance transaction was complete." If the cause of action accrued at that time, the time for bringing an action

---

[10] The complaint alleges that the refinancing transaction closed on August 12, 2003, but its chronology of these events is in many respects incoherent. In any event, the refinancing was certainly completed no later than September 9, 2003, when the deeds of trust—and plaintiff's grant deed to Serrano—were recorded.

10

continued to run without apparent interruption at least until the filing of Serrano's bankruptcy petition on March 22, 2009, some five-plus years later. Since this exceeds the statutory period by some two years, the cause of action would be barred. The critical question then becomes whether the cause of action accrued at some later time, and specifically, within the three years preceding March 22, 2009. Although the statute states that a cause of action based on fraud or mistake accrues upon "discovery, by the aggrieved party, of the facts constituting the fraud or mistake" (Code Civ. Proc., § 338, subd. (d)), it is settled that a plaintiff must exercise reasonable diligence to discover the facts. "[T]he plaintiff must plead and prove the facts showing: (a) lack of knowledge; (b) lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date); (c) how and when the plaintiff did actually discover the fraud or mistake. Under this rule, constructive and presumed notice or knowledge are equivalent to knowledge. So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his or her investigation (such as public records or corporation books), the statute commences to run." (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 659, p. 870.)

Ordinarily a breach of promise such as Serrano's failure to promptly reconvey title might be expected to put a reasonable person in plaintiff's position on inquiry as to the promisor's possible lack of good faith. The plaintiff's failure to discover the fraud or mistake might still be excused, but this would require the allegation of additional facts tending to have that effect. The complaint here contains no such further allegations. Plaintiff contends otherwise, but she points to nothing in the pleading that remotely satisfies the requirements described above. On its face all the complaint shows is that Serrano made a promise in August 2003 which she promptly breached, after which plaintiff took no action for over five years.

11

To be sure, the complaint contains a conclusory allegation that plaintiff's reliance on Serrano's promises was reasonable. But no promises other than the original undertaking to reconvey are alleged. Therefore this allegation must be understood as referring only to that original promise. Assuming that plaintiff's reliance on that promise was reasonable *when it was made*, the question remains of when such reliance *stopped* being reasonable in light of Serrano's complete failure to do what she had promised.

It thus appears beyond question that the complaint is insufficient to avoid the bar of the statute. The more difficult question is whether the trial court erred in not granting plaintiff leave to attempt to plead facts in avoidance. It is of course the general rule that leave to amend is liberally allowed, to the end that substantial justice may be served. And while the question of leave to amend is said to be vested in the trial court's discretion, and thus subject to reversal on appeal only for an abuse of that discretion, it has also been held that a showing sufficient to justify amendment may be made for the first time on appeal. (*Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 108 Cal.App.4th 1028, 1041-1042, quoting *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386; see *Rufini v. CitiMortgage, Inc.* (2014) 227 Cal.App.4th 299, 306.) Yet plaintiff has made no such showing, either below or here.

Plaintiff contends that if she had been permitted leave to amend, she would have "provided facts to show that the Chase Respondents engaged in blameworthy or inequitable conduct." This is somewhat beside the point; the question is not how defendants conducted themselves but *when plaintiff's cause of action accrued*, which in turn depends on when she discovered, or should have discovered, the fraud or mistake on which her claim for reformation is based. Her allusion to "blameworthy or inequitable conduct" echoes the trial court's written order sustaining the demurrer; but that order itself missed the mark in this respect. The court wrote that the complaint was barred by

12

the statute of limitations because plaintiff had "not alleged facts that would estop Chase and Deutsche Bank from asserting the defense." The court thus seemed to suppose that the only way plaintiff could avoid the statute was to raise an estoppel against defendants—which, as the court recognized, requires " ' " 'conduct' " ' " by which the defendant " ' " 'has induced another into forbearing suit within the applicable limitations period.' " ' " (*May v. City of Milpitas* (2013) 217 Cal.App.4th 1307, 1338, quoting *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.) But no party had mentioned the doctrine of estoppel up to that point—and for good reason. While that doctrine can excuse late filing of *any* claim, regardless of the nature of the cause of action, it has little practical application to claims sounding in fraud of mistake, which are subject to delayed accrual *by the statute's own terms*. And while it is true that delayed discovery of a fraud cause of action will often involve some kind of inequitable conduct by the perpetrator— conduct that might also ground an estoppel—there is no *requirement* of any such misconduct. Rather, the statute delays accrual until the plaintiff discovers, or in the exercise of reasonable diligence should discover, the facts constituting the fraud.

The question, then, is not whether plaintiff can point to some blameworthy conduct by defendants but whether she can allege facts justifying her own conduct in waiting at least two years beyond the limitations period before seeking any judicial remedy in connection with the claimed fraud or mistake. The assertedly inequitable conduct she attributes to defendants has no apparent bearing on that question. Thus she asserts that defendants acted inequitably by "taking [plaintiff's] mortgage payments, but failing to complete [loan modification] processing after she contacted them" seeking such a modification. Such conduct could have no apparent tendency either to conceal or disclose the fraud or mistake on which the cause of action is predicated. The same is true of the "inequitable conduct of their agent People[']s Choice" in "fail[ing] to acknowledge and document what was agreed upon by the parties." Assuming this was indeed

13

blameworthy conduct—a premise that is hardly substantiated by anything in this record—it has no apparent bearing on the accrual of a cause of action predicated on fraud and mistake as between plaintiff and her daughter. Nor is there any traction in plaintiff's attempt to impute unsavory motives to People's Choice, i.e., that it "was only interested in acquiring this loan in order to make profits from it for [itself] and Chase, rather than formally recogniz[ing] what was understood to be a loan secured by [plaintiff's] property."

Again, the question is not what defendants did but what plaintiff knew, or should have known, and when, and why—or more precisely, why not sooner. Plaintiff has offered no pertinent answer to this question. In her brief she asserts that she "did not realize *that the documents would need to be reformed* until her daughter and [*sic*] failed and later refused to transfer 100% of the title back to her. . . ." (Italics added.) But the question is not when she realized that "the documents would have to be reformed," but when she realized that they were the products of fraud or mistake. The "failure" to which she alludes occurred within a few months after the 2003 refinancing. She offers no explanation for waiting five years between that failure and the express *refusal* that made her realize "that her daughter never intended to voluntarily give her 100% of the legal title." At most plaintiff suggests that on unspecified occasions her daughter expressed, or otherwise communicated, an intention to eventually perform the promise. But the promise, as alleged, was that her daughter would reconvey title *promptly* after refinancing was achieved. Long before five years had elapsed it should have been obvious that she did not intend to perform the promise as formulated in the complaint, and assuming she had no intention of performing at the beginning—as the fraud claim necessarily supposes—there is nothing in any of plaintiff's papers that plausibly suggests a delayed discovery of this fact.

14

Indeed, plaintiff's counsel makes no secret of the fact that the spur to sue was not any new discovery or realization but the fact that Serrano was getting into serious financial difficulty and that if the property were not placed in plaintiff's name it might be lost.  A party cannot avoid the effect of the statute of limitations by asserting that she lacked sufficient motivation to vindicate her rights until after the time had run.  Once the cause of action accrues, the plaintiff must act within the prescribed period, or the opportunity to vindicate her rights will be lost.  After ample opportunity in the trial court and here, plaintiff has failed to identify additional facts that, if pleaded, might enable her to successfully avoid the statutory bar.  Accordingly, we cannot say that the trial court abused its discretion in denying leave to amend, even though it relied on an erroneous theory in doing so.

## DISPOSITION

The judgment is affirmed.

15

 

_____
RUSHING, P.J.

WE CONCUR:

_____
PREMO, J.

_____
ELIA, J.