[No. B223364. Second Dist., Div. One. June 29, 2011.]

JESSICA BOWER, Plaintiff and Appellant, v.
AT&T MOBILITY, LLC, et al., Defendants and Respondents.

1548

## Counsel

Law Offices of Thomas W. Falvey, J.D. Henderson; Girardi | Keese, Thomas V. Girardi, Graham B. LippSmith; Stephen F. Danz & Associates and Stephen F. Danz for Plaintiff and Appellant.

McKenna Long & Aldridge, Robert A. Cocchia, Gary K. Brucker, Jr., and Peter Z. Stockburger for Defendants and Respondents.

## Opinion

**ROTHSCHILD, Acting P. J.**—Jessica Bower appeals from the judgment entered after the trial court sustained without leave to amend the demurrer of AT&T Mobility, LLC, AT&T Inc. and AT&T Corporation (collectively, AT&T) in this action based on Bower's alleged payment of $15.50 as part of her purchase of a cellular telephone. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Bower's Original Complaint*

On July 17, 2009, Bower filed a class action complaint against AT&T on behalf of herself individually and other AT&T customers alleging causes of action for violation of Civil Code section 1750 et seq., the Consumers Legal Remedies Act (CLRA); unlawful, unfair and fraudulent business practices under Business and Professions Code section 17200 (section 17200); and false or misleading advertising under Business and Professions Code section 17500 (section 17500). Bower based her causes of action on allegations that, on January 27, 2009, she had purchased a cellular telephone from AT&T, retailing at $399, at a discounted rate of $199, on the condition that she enter a wireless service agreement with AT&T for a two-year period. Although Bower purchased the telephone at the discounted rate, she was required to pay the California sales tax of 7.75 percent on the undiscounted price of the telephone. Paying tax on the undiscounted price of the telephone, as compared to the tax that would have corresponded to the discounted price of the telephone, cost Bower an additional $15.50.

According to Bower, based on information obtained from AT&T's Web site and its responses to her postpurchase communications, in purchasing the cellular telephone and entering the wireless service agreement, Bower relied on "misrepresentations" and "misleading statements" by AT&T that she "had no choice but to pay sales tax based on the undiscounted price" of the telephone. Nevertheless, although AT&T is required to remit sales tax to the

state on the undiscounted price of the cellular telephone, its decision to pass that cost on to consumers is discretionary. AT&T's conduct "has deprived, and continues to deprive, consumers of the ability and opportunity to negotiate the amount of sales tax they will be charged by [AT&T] and/or to purchase a cell phone from one of [AT&T's] competitors." Bower sought an injunction, restitution, declaratory relief, interest, punitive damages, attorney fees and costs.

## 2. Bower's First Amended Complaint and the Demurrer Sustained with Leave to Amend

Bower filed a first amended complaint on August 25, 2009, alleging the same three causes of action.[1] In her first amended complaint Bower detailed that California Code of Regulations, title 18, section 1585, subdivision (b)(3) (Regulation 1585, subdivision (b)(3)), requires retailers to "report and pay a sales tax on the full, 'unbundled' price of a discounted or 'free' cell phone when part of a bundled transaction [(including a wireless service agreement)]. Regulation 1585 makes it clear the retailer, not the consumer, 'is required to report and pay' the sales tax, although retailers 'may' collect tax reimbursement from the consumer." Bower further stated that, "[d]espite the permissive language of Regulation 1585 and AT&T's explicit, specific promises to consumers [through its website] that AT&T will collect only 'mandatory' taxes and will not disguise cost recovery fees by labeling them as taxes, AT&T falsely informs consumers the government *requires* consumers to pay the full sales tax on bundled cell phone transactions, and that AT&T is *required* by law to pass this charge on to the consumer." Bower alleged that, "[w]hen [she] inquired why she was paying more in sales tax than appeared correct, she was told by AT&T salespersons it was a mandatory tax on the unbundled price of the cell phone. She was never informed it was AT&T's decision to charge her the cost recovery fee." Bower alleged that she "relied on the misrepresentations and misleading statements made by [AT&T] that the government taxes consumers, not retailers, on the undiscounted price of cell phones in bundled transactions" and that AT&T's conduct deprived consumers of the ability to negotiate or purchase a cellular telephone from an AT&T competitor. She sought the same relief as she had in her original complaint.

AT&T filed a demurrer to the first amended complaint, making four arguments: (1) Bower's claims are barred by article XIII, section 32 of the

---

[1] Apparently unaware that Bower had filed a first amended complaint, AT&T demurred to Bower's original complaint on August 27, 2009, arguing that the pleading did not state facts sufficient to constitute a cause of action (Code Civ. Proc., § 430.10, subd. (e)). This demurrer was not ruled upon, and Bower's first amended complaint became the operative pleading. (See *id.*, § 472.)

California Constitution, precluding actions to prevent or enjoin the collection of any tax, because they are a disguised attempt for reimbursement of sales tax through the courts rather than through the state Board of Equalization; (2) AT&T is entitled to safe harbor immunity because it properly calculated and collected the sales tax reimbursement from Bower; (3) Bower did not and cannot allege that she actually relied on a genuine misrepresentation made by AT&T; and (4) Bower lacks standing to assert her causes of action under sections 17200 and 17500 because she cannot allege an injury in fact.

In opposition, Bower argued that her case is not a sales tax dispute and thus that the prohibitions against lawsuits to prevent or enjoin taxation do not apply. She emphasized that her case involves an affirmative misrepresentation that AT&T was required to pass on to her the sales tax on the full, undiscounted price of the cellular telephone, when such decision was purely discretionary. She also argued that she sufficiently had alleged reliance on the misrepresentations and damage therefrom.

The trial court sustained AT&T's demurrer, relying on AT&T's contention that "the claim on behalf of [Bower] and a putative class fails as a matter of law as it is an improper effort to obtain a tax refund on the purchase of a cell phone bundled with a service agreement . . . ." The court afforded Bower 20 days' leave to amend her complaint.

3. *Bower's Second Amended Complaint and the Demurrer Sustained*
 *Without Leave to Amend*

Within the 20 days, on December 1, 2009, Bower filed a second amended complaint, alleging the same three causes of action under the CLRA, section 17200 and section 17500, and adding a cause of action for common law fraud. Bower again brought the action individually and on behalf of all persons who purchased from AT&T "a discounted or free wireless telecommunications device in conjunction with the sale of a wireless service agreement" in California. Bower continued to rely on Regulation 1585, subdivision (b)(3), requiring the retailer of the wireless communication device to report and pay tax based on the unbundled, i.e., full, undiscounted price, of the device, and permitting it to collect tax or tax reimbursement from its customer. She claimed that her lawsuit "does not seek the return of any tax or tax reimbursement," but is to recover based on AT&T's misrepresentations to her that it was required to pass on to her the sales tax on the unbundled price of the cellular telephone that she purchased when such passthrough is merely discretionary. This time, Bower alleged that "[s]he was never informed it was AT&T's discretion whether or not to charge her the cost recovery fee. When [she] inquired why she was paying this unexpected sales tax, she was told by an AT&T representative 'there's nothing that can be done about it' and AT&T

is 'required by law' to charge her the tax." In addition, "[s]he was denied any opportunity [to] shop around for retailers that do not charge consumers this discretionary fee." Bower claimed that AT&T previously had pledged in connection with unrelated proceedings in other states not to represent to consumers that they are required to pay discretionary fees. Bower continued to seek the same relief.

AT&T filed a demurrer to the second amended complaint on the same four grounds asserted in its demurrer to the first amended complaint, namely, that Bower's causes of action are barred by the California Constitution as impermissible attempts to prevent or enjoin tax collection; AT&T is entitled to safe harbor immunity because its sales tax collection practices are lawful; Bower did not and cannot allege actual reliance on a genuine misrepresentation; and Bower lacks standing to assert her section 17200 and section 17500 claims. In addition, in response to Bower's newly pleaded fraud cause of action, AT&T asserted that the claim could not survive demurrer because it did not allege the elements of fraud with specificity.

In opposition, Bower continued to assert that her lawsuit is not a sales tax case and thus the California Constitution's provisions regarding actions for sales tax reimbursement are inapplicable and AT&T is not entitled to rely on safe harbor immunity to defeat her case. She also maintained the second amended complaint sufficiently pleaded reliance, injury in fact and fraud.

The trial court sustained AT&T's demurrer to Bower's second amended complaint without leave to amend. According to the court, Bower "is adamant that she is not seeking a tax refund and points to her own allegations acknowledging that the tax is actually owed by the retailer (here AT&T) and that, under California law, the sales 'tax' charged to a customer like [Bower] is really discretionary with the retailers as to what and how much of the sales tax that the State charges them is passed on and sought from the customer as reimbursement. If there is a customer claim for an improper tax assessment, normally there is an administrative requirement to submit a claim for refund to allow the improper assessment to be remedied and this requirement was found to apply even to cases where the consumer was seeking the purported 'refund' however disguised from the retailer and not directly against the Board of Equalization. [Citations.] Although there would appear to be little direct case law on point finding that an administrative requirement here is properly imposed or that [Bower] cannot properly couch her claim for 'damages' against the retailers and not be deemed to be making a disguised 'tax refund' request[,] [AT&T is] correct that [Bower] is not alleging facts as to essential elements such as damages." Bower's "allegations of actual loss here are the fact that she lost the opportunity to go out and 'shop around' to [AT&T's] competitors and buy a phone and service agreement that did not

charge or pass through the full tax. Is this a proper showing for standing to seek restitution or actual damages if she is claiming it is not about an improper tax being levied against her? What is the damage? She received a phone and service package which have value. The only 'damages' are the rather speculative claim that she lost the ability to shop around to other vendors[.] [¶] . . . Are the claimed damages merely a claim for a tax refund? The answer no matter how it is couched has to be yes." The court subsequently entered judgment in favor of AT&T, and Bower timely appealed.[2]

## DISCUSSION

### 1. Standard of Review

In reviewing a judgment following the sustaining of a demurrer without leave to amend, we decide de novo whether the complaint states facts sufficient to state a cause of action. (*Hoffman v. State Farm Fire & Casualty Co.* (1993) 16 Cal.App.4th 184, 189 [19 Cal.Rptr.2d 809].) We treat the demurrer as admitting all facts properly pleaded, but we do not assume the truth of contentions, deductions or conclusions of law. (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865 [62 Cal.Rptr.3d 614, 161 P.3d 1168].) "The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) A reviewing court will affirm a judgment based on the sustaining of a demurrer on any properly supported ground, regardless of the trial court's reason for its ruling. (*Fremont Indemnity Co. v. Fremont General Group* (2007) 148 Cal.App.4th 97, 111 [55 Cal.Rptr.3d 621].)

### 2. The Trial Court Properly Sustained AT&T's Demurrer to Bower's Second Amended Complaint Without Leave to Amend

#### a. Introduction

■ California's policy regarding sales tax is that the tax is imposed on retailers for the privilege of selling tangible personal property in the state. (*National Ice etc. Co. v. Pacific F. Exp. Co.* (1938) 11 Cal.2d 283, 289–290 [79 P.2d 380]; *Gen. Elec. Co. v. State Bd. of Equalization* (1952) 111 Cal.App.2d 180, 185 [244 P.2d 427] ["sales tax is imposed on the seller, not

---

[2] AT&T moved for judicial notice of the complaint in *Carney v. Verizon Wireless Telecom, Inc.* (S.D.Cal., No. 09cv1854 DMS (AJB), complaint filed Nov. 30, 2009), as well as two exhibits to that complaint. Because the complaint and the exhibits are not necessary to our decision, we deny the motion for judicial notice.

upon the buyer"]; see Rev. & Tax. Code, § 6051.) Nevertheless, a retailer may seek sales tax reimbursement from a consumer. "Whether a retailer may add sales tax reimbursement to the sales price of the tangible personal property sold at retail to a purchaser depends solely upon the terms of the agreement of sale." (Civ. Code, § 1656.1, subd. (a).)

Regulation 1585, subdivision (b)(3), applicable to the bundled transaction at issue here, in which Bower purchased a cellular telephone at a discounted price on the condition that she enter a wireless service agreement for a specified time period, reflects California's general policy imposing sales tax on the retailer and permitting the retailer to collect sales tax reimbursement from the consumer. Under Regulation 1585, subdivision (b)(3), "[t]ax applies to the gross receipts from the retail sale of a wireless telecommunication device sold in a bundled transaction, measured by the unbundled sales price of that device. Tax applies to the unbundled sales price whether the wireless telecommunication device and utility service are sold for a single price or are separately itemized in the context of a sale or on a sales invoice. *The retailer of the wireless telecommunication device is required to report and pay tax measured by the unbundled sales price of the device and may collect tax or tax reimbursement from its customer measured by the unbundled sales price.* Tax does not apply to the charges in excess of the unbundled sales price made for telecommunication services." (Italics added.)

The heart of Bower's case in the operative second amended complaint is that, although Regulation 1585, subdivision (b)(3), permitted AT&T to collect sales tax reimbursement from her on the unbundled sales price of the cellular telephone that she purchased, it falsely misrepresented to her that it was required to do so. According to Bower, AT&T was required under Regulation 1585, subdivision (b)(3), to remit sales tax to the state on the unbundled sales price of the cellular telephone that she purchased. It, however, was not *required* to charge her reimbursement for the same amount, as it represented to her, but only *permitted* to do so. Bower contends that the alleged misrepresentation, i.e., that AT&T was required to collect sales tax from her on the full, unbundled price of the cellular telephone, amounts to actionable conduct under section 17200, section 17500, the CLRA and principles of common law fraud and that the second amended complaint is sufficient to withstand demurrer. We disagree that Bower has stated any cause of action.

b. *Section 17200*

Section 17200 "prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.' [Citation.] Its purpose 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods

and services.' [Citations.]" (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320 [120 Cal.Rptr.3d 741, 246 P.3d 877].) Although section 17200 contains sweeping language as to what is considered a business practice, standing to sue under the statute, as defined by Business and Professions Code section 17204, is confined " 'to any "person who has suffered injury in fact and has lost money or property" as a result of unfair competition [citations].' " (*Kwikset Corp.*, at pp. 320–321.) In other words, to have standing to bring a section 17200 cause of action, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." (*Kwikset Corp.*, at p. 322.) As to the injury in fact, or economic injury, requirement, the injury must be " 'an invasion of a legally protected interest which is (a) concrete and particularized, [citations]; and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " [citations].' [Citation.]" (*Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal.App.4th 798, 814 [66 Cal.Rptr.3d 543], disapproved on another ground in *Kwikset Corp.*, at p. 337; see also *Hall v. Time, Inc.* (2008) 158 Cal.App.4th 847, 853 [70 Cal.Rptr.3d 466].)

There are two key allegations in Bower's second amended complaint. First, she alleged, for the first time in the second amended complaint, that, "[w]hen [she] inquired why she was paying this unexpected sales tax, she was told by an AT&T representative that 'there is nothing that can be done about it' and AT&T is 'required by law' to charge her the tax." Second, she alleged that she "relied on the misrepresentations and misleading statements made by [AT&T] that AT&T is legally required to charge consumers for the bundled sales tax. She was denied any opportunity [to] shop around for retailers that do not charge consumers this discretionary fee."³

 These allegations are insufficient to plead the required element of injury in fact, the absence of which is fatal to Bower's section 17200 cause of action. Bower's claim that she was told that charging her "sales tax" on the full, undiscounted price of the telephone was mandatory, when it was merely discretionary, and that she was "denied any opportunity" to shop around for a retailer that does not charge sales tax reimbursement on the full, undiscounted

---

³ Neither before the trial court in opposition to the demurrer nor in her appellate briefs or at oral argument before this court did Bower request leave to amend or set forth any additional facts that she could allege to cure the deficiencies in the second amended complaint. Rather, on appeal, as in the trial court, Bower maintained the second amended complaint was sufficiently pleaded. Accordingly, Bower did not carry her burden to demonstrate that she should be granted further leave to amend (*Wilner v. Sunset Life Ins. Co.* (2000) 78 Cal.App.4th 952, 959 [93 Cal.Rptr.2d 413]), and we thus adhere to the allegations in her second amended complaint in determining whether she has stated a cause of action

price of a cellular telephone as part of a bundled transaction pleads at the most a conjectural or hypothetical injury, not an injury in fact.

Bower did not allege that she could have obtained a bundled transaction for a new cellular telephone—the telephone that she selected—at a lower price from another source. (*Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1591 [80 Cal.Rptr.3d 316] [affirming judgment based on demurrer sustained to § 17200 cause of action on grounds of lack of economic injury when plaintiffs did "not allege they could have bought the same insurance for a lower price either directly from the insurer or from a licensed agent"].) This is not a case in which the defendant's alleged misrepresentation caused a consumer to purchase a product that he or she would not have bought but for the misrepresentation and the product was worth less than represented by the defendant or was different from what the consumer wanted and expected to buy. (Cf. *Kwikset Corp. v. Superior Court, supra,* 51 Cal.4th at p. 330 [cause of action stated under § 17200 because defendant's labeling of product as "Made in America" when all components were not made in America allegedly caused the consumer to "part with more money than he or she otherwise would have been willing to expend" and he or she would not have purchased the product but for the misrepresentation].) Bower thus did not plead injury in fact in connection with her section 17200 cause of action.

### c. *Section 17500*

Section 17500 makes it unlawful for a person, firm, corporation, association, or any employee thereof "with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto" by means of advertising, "which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ." Like section 17200, section 17500 requires an individual suing under the statute to have " 'suffered injury in fact' " and to have " 'lost money or property as a result of such unfair competition.' " (*Buckland v. Threshold Enterprises, Ltd., supra,* 155 Cal.App.4th at p. 819; see *Kwikset Corp. v. Superior Court, supra,* 51 Cal.4th at pp. 321–322 [standing limitations of § 17200 apply equally to § 17500].)

Bower's cause of action under section 17500 alleged that AT&T "fraudulently inform[s] customers they will be charged only 'mandatory' taxes, when in fact [AT&T was] and [is] labeling discretionary cost recovery fees as taxes and charging consumers this fee while making fraudulent misrepresentations that [AT&T is] required by law to do so." Assuming the alleged misrepresentation made to Bower could constitute advertising within the meaning of

section 17500, her failure to plead injury in fact, i.e., economic harm, as to her section 17200 cause of action defeats her section 17500 cause of action as well. As noted, in her second amended complaint, Bower alleged no more than conjectural or hypothetical injury, which is insufficient to sustain a cause of action.

### d. *CLRA*

The CLRA declares unlawful a variety of "unfair methods of competition and unfair or deceptive acts or practices" used in the sale or lease of goods or services to a consumer. (Civ. Code, § 1770, subd. (a).) An individual seeking to recover damages under the CLRA based on a misrepresentation must prove, among other things, actual injury. "Relief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof." (*Wilens v. TD Waterhouse Group, Inc.* (2003) 120 Cal.App.4th 746, 754 [15 Cal.Rptr.3d 271].) "Accordingly, 'plaintiffs in a CLRA action [must] show not only that a defendant's conduct was deceptive but that the deception caused them harm.' [Citations.]" (*Buckland v. Threshold Enterprises, Ltd., supra*, 155 Cal.App.4th at p. 809.) A plaintiff bringing a CLRA cause of action must not only be exposed to an unlawful practice but also have suffered "some kind of damage." (*Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 641 [88 Cal.Rptr.3d 859, 200 P.3d 295] (*Meyer*); see also *id.* at p. 643 ["allegedly unlawful practice under the CLRA" must result "in some kind of tangible increased cost or burden to the consumer"].)

In her cause of action under the CLRA, Bower alleged that AT&T violated numerous provisions of the act by misrepresenting that California law requires it to charge customers sales tax on the full, unbundled price of the cellular telephone when it is not legally required to do so, but rather is only permitted to seek sales tax reimbursement from its customers. On appeal, she contends her allegation that she was denied the opportunity to shop around for a retailer that does not charge sales tax reimbursement on the full, undiscounted price of a cellular telephone as part of a bundled transaction is sufficient to satisfy the CLRA's pleading requirements. Similar to her section 17200 cause of action, this allegation is insufficient to support her CLRA cause of action. As noted, Bower did not allege that she could have obtained a bundled transaction for the new cellular telephone that she wanted at a lower price from another source. Bower thus did not allege a "tangible increased cost or burden" as a result of AT&T's purported misrepresentation sufficient to pursue a CLRA cause of action. (*Meyer, supra*, 45 Cal.4th at p. 643.)[4]

---

[4] Bower cites *Meyer, supra*, 45 Cal.4th at page 643, where the Supreme Court in distinguishing and disapproving in part its prior opinion in *Kagan v. Gibraltar Sav. & Loan Assn.* (1984) 35 Cal.3d 582 [200 Cal.Rptr. 38, 676 P.2d 1060], surmised that the plaintiff in *Kagan* "may

e. *Common law fraud*

■ "The well-established common law elements of fraud which give rise to the tort action for deceit are: (1) misrepresentation of a material fact (consisting of false representation, concealment or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to deceive and induce reliance; (4) justifiable reliance on the misrepresentation; and (5) resulting damage. [Citations.] . . . It is essential . . . that the person complaining of fraud actually have relied on the alleged fraud, and suffered damages as a result. [Citations.]" (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 481–482 [80 Cal.Rptr.2d 329], fn. omitted.) "Fraud is required to be pleaded with specificity." (*Philipson & Simon v. Gulsvig* (2007) 154 Cal.App.4th 347, 362 [64 Cal.Rptr.3d 504].)

Bower's failure to plead injury in fact (in the context of common law fraud described as damages) with respect to her consumer causes of action defeats her common law fraud cause of action as well.[5]

---

have also incurred opportunity costs, because [the defendant's] alleged misrepresentations may have diverted the plaintiff from finding a financial institution that did not charge administrative fees." Contrary to Bower's suggestion, the Supreme Court in *Meyer* did not sanction a CLRA cause of action based solely on an allegation that the consumer was denied an opportunity to shop. Rather, the Supreme Court "decline[d] to extend *Kagan* to situations in which an allegedly unlawful practice under the CLRA has not resulted in some kind of tangible increased cost or burden to the consumer." (*Meyer*, at p. 643, fn. omitted.)

[5] Bower faults the trial court for concluding, based on AT&T's assertions, that her claimed relief in reality was for a tax refund and thus impermissible. She continues on appeal to insist that she did not seek a tax refund and thus that article XIII, section 32 of the California Constitution, precluding the prevention or enjoining of tax collection, and related cases do not apply. We note that the issue whether article XIII, section 32 of the California Constitution or Revenue and Taxation Code section 6932 bars a consumer from filing a lawsuit against a retailer under Business and Professions Code section 17200 or the CLRA alleging that the retailer collected sales tax reimbursement on transactions that were not taxable currently is pending before the Supreme Court. (*Loeffler v. Target Corp.* (2009) 173 Cal.App.4th 1229 [93 Cal.Rptr.3d 515] [Second Dist., Div. Three], review granted Sept. 9, 2009, S173972; *Yabsley v. Cingular Wireless, LLC* (2009) 176 Cal.App.4th 1156 [98 Cal.Rptr.3d 657] [Second Dist., Div. Six], review granted Nov. 19, 2009, S176146 [holding for *Loeffler* as the lead case].) We need not decide whether Bower's case is indeed one seeking a tax refund, or its relation to the cases pending before the Supreme Court, because we conclude that sustaining the demurrer to her second amended complaint was proper on the ground that she did not sufficiently plead her causes of action. In addition, Bower mentions in her appellate briefs a cause of action based on the federal Communications Act of 1934 (47 U.S.C. § 151 et seq.). Her second amended complaint, however, contained no such cause of action, and she presents no factual allegations suggesting that she could plead one. We thus do not consider any claim under the federal communications act as a ground to reverse the judgment.

## DISPOSITION

The judgment is affirmed. Respondents are entitled to recover their costs on appeal.

Chaney, J., and Johnson, J., concurred.