Filed 4/29/16  Mejia v. Bank of America CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARIA J. MEJIA, | B257879 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC503092) |
| v. | |
| BANK OF AMERICA, N.A., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Maria J. Mejia, in pro. per., for Plaintiff and Appellant.

Reed Smith, Michael Gerst and Kasey J. Curtis for Defendants and Respondents.

Plaintiff and appellant Maria Mejia appeals a judgment of dismissal following the sustaining of a demurrer without leave to amend in favor of defendants and respondents Bank of America, N.A., for itself and as successor by merger to BAC Home Loans Servicing, L.P., and erroneously sued as Bank of America Corporation, and Recon Trust Company, N.A. (hereafter, Bank of America).

After her home was sold in a foreclosure sale, Mejia sued Bank of America, asserting claims for wrongful foreclosure, negligence, breach of contract and promissory estoppel, among others. Mejia challenged Bank of America's authority to foreclose on the property and alleged it had not complied with procedural requirements for the notice of the sale. Mejia also alleged Bank of America had misrepresented that it would modify her loan and that no foreclosure sale was scheduled. The trial court sustained Bank of America's demurrer to the first amended complaint (FAC) without leave to amend, and Mejia appealed. We reverse the judgment as to the negligence cause of action and remand to the trial court with directions to allow Mejia the opportunity to amend this cause of action. In all other respects, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

In March 1994, Mejia "acquired" a home (Property) in Sunland, California. In September 2003, she obtained a loan of $310,000 from HSBC Mortgage Corporation (HSBC) secured by a deed of trust on the Property.[2] HSBC subsequently assigned its interest in the deed of trust to Bank of America.

In April 2009, the City of Los Angeles shut off the water supply to the Property. Mejia filed an action for quiet title against the City (the "water litigation").

---

[1] Because the issue on appeal is whether the trial court properly sustained Bank of America's demurrer to the complaint, our summary of the relevant facts assumes the factual allegations in the complaint are true. (See *Bower v. AT&T Mobility, LLC* (2011) 196 Cal.App.4th 1545, 1552.)

[2] In November 2006, Mejia obtained a loan of up to $200,000 from LaSalle Bank Midwest, N.A., secured by a junior deed of trust on the Property. That deed of trust is not at issue in this appeal.

2

In June 2010, Bank of America sent Mejia a notice of intent to accelerate "demand[ing] a total due of $4,306.83." Mejia wrote Bank of America, stating that "her addition of the numbers did not total '$4,306.83' and ask[ing] for clarification." She did not receive a response. On June 15, 2010, Recon Trust Company, N.A. (Recon Trust), "acting as an agent for the Beneficiary," recorded a notice of default on the deed of trust.

On August 3, 2010, Mejia went to a Bank of America location and told a representative there that "she was living without water on the property, . . . had received a notice of default," and was involved in litigation regarding water rights to the property. The representative said she would "see what she could do to help" and that someone would contact Mejia.

On August 6, 2010, a Bank of America representative called Mejia and asked her to submit, "among other things, [the] amended complaint in the water litigation." Mejia mailed and faxed the requested documents as well as her "financial information relating to income and expenses" to Bank of America.

On August 17, 2010, another representative, Isabel Barber, called Mejia and said she "was going to present Mejia's file to the management committee" and "would get back to [her]." On August 30, 2010, Mejia wrote Barber asking for a response to the documents she had submitted.

On September 2, 2010, Barber told Mejia she "was waiting to see whether Mejia would be put on forbearance or loan modification" and that she had "received approval to put the foreclosure on hold . . . ."

In December 2010, "Mejia was told that Bank of America . . . was still working toward a forbearance or loan modification and there was no foreclosure sale pending." On December 16, 2010, Barber "confirmed no foreclosure sale date was set and assured Mejia . . . a loan modification to [*sic*] be completed in three to four months." However, that same day, Recon Trust executed a notice of trustee's sale announcing the Property was scheduled to be sold on January 12, 2011. The notice was recorded four days later. Bank of America did not post notice of the sale on the Property.

3

On December 20, 2010, Recon Trust recorded a substitution of trustee and assignment of deed of trust substituting Recon Trust as trustee under the deed of trust and providing that HSBC assigned its interest in the deed of trust to BAC Home Loans Servicing, LP (BAC). The document was executed by Kevin Rudolf and notarized by Kenny Villavicencio. The FAC alleged that Rudolf and Villavicencio had also signed assignments relating to other properties and their "signature[s] [were] different from assignment to assignment . . . ."

In January 2011, Mejia learned that Bank of America "intend[ed] to sell the . . . Property at a foreclosure sale." On January 10, 2011, Barber told Mejia there would be a "loan modification review." Another Bank of America representative referred Mejia to a customer service line that handled loan modifications, but when Mejia called that number, she was told it was too late for her to apply for a loan modification.

The trustee's sale took place on March 17, 2011. The trustee's deed upon sale (trustee's deed) stated that Bank of America had purchased the Property. On April 1, 2011, Mejia received a "move out agreement" from Bank of America offering her $4,000 to move out of the Property and stating that BAC, "a subsidiary of Bank of America," had "acquired" the Property through the foreclosure sale. Mejia moved out later that month.

Mejia filed the present action for wrongful foreclosure in March 2013.[3] Bank of America demurred and the court sustained the demurrer with 30 days leave to amend. Mejia then filed the FAC alleging causes of action for wrongful foreclosure in violation of the Civil Code, "tortious conduct," including "negligence" and "intentional infliction of emotional distress" breach of contract, promissory estoppel, declaratory relief, and injunctive relief. The FAC also sought to quiet title and cancel the trustee's deed based upon the allegations of wrongful foreclosure.

The FAC alleged Bank of America had wrongfully foreclosed on her Property because (1) "[n]o chain of title or chain of ownership exists demonstrating that Bank of

---

[3] HSBC was also named as a defendant. It demurred, and the court sustained the demurrer without leave to amend. That order was not appealed.

4

America is successor to the HSBC original loan," (2) Bank of America failed to comply with procedural requirements for the notice of sale, and (3) the trustee's deed was void. The tort cause of action for "negligence [and] intentional infliction of emotional distress" alleged that Bank of America had breached its duty "in not following proper foreclosure procedures," and the alleged conduct was "extreme and outrageous." The breach of contract cause of action alleged that Bank of America "promised Mejia to . . . have a loan modification in three to four months" and "breached its promise in . . . proceed[ing] with the foreclosure sale." The promissory estoppel cause of action alleged that Mejia reasonably relied to her detriment on Bank of America's promise of a loan modification.

Bank of America demurred to each cause of action. Mejia opposed the demurrer and moved to strike it as untimely and in excess of the mandated page limit. The court denied the motion to strike the demurrer. The court sustained the demurrer without leave to amend on the grounds, inter alia, (1) the FAC's allegations were insufficient to show an illegal sale of the property or to rebut the presumption of a proper sale, (2) the tort cause of action did not allege facts showing Bank of America owed Mejia a duty or that it engaged in extreme and outrageous conduct, (3) the statute of frauds barred the breach of contract cause of action, and (4) the promissory estoppel cause of action did not allege facts showing a "clear and unambiguous promise." Mejia timely appealed.

## CONTENTIONS[4]

Mejia contends the FAC adequately alleged facts showing Bank of America's wrongful foreclosure of the Property, Bank of America's breach of a duty of care in the handling of her request for a loan modification, the existence of a valid contract to

---

**4** Mejia's requests for judicial notice, filed March 6, 2015 and November 2, 2015, are denied. (Evid. Code, § 452.) One of the subject documents (Exhibit I) was attached to the FAC and, therefore, is in the record already. The other documents were not before the trial court and are not necessary to the resolution of this appeal.

provide her with a loan modification, and a clear and unambiguous promise to modify her loan.[5]

## DISCUSSION

1.  *Standard of Review*

"On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law. [Citations.] We give the complaint a reasonable interpretation, reading it as a whole and viewing its parts in context. [Citations.] We deem to be true all material facts properly pled. [Citation.] We must also accept as true those facts that may be implied or inferred from those expressly alleged. [Citation.] If no liability exists as a matter of law, we must affirm that part of the judgment sustaining the demurrer. [Citation.]" (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.)

2.  *The Causes of Actions for Quiet Title, Civil Code Violations, and Cancellation of the Trustee's Deed*

Although separately alleged in the FAC, the causes of action for quiet title, violation of Civil Code sections 2924 and 2924h, and cancellation of the trustee's deed are all based on the alleged wrongful foreclosure of Mejia's property. Therefore, we address them together.[6]

---

[5]     Mejia also argues the court erred in denying (1) her motion to strike, and (2) her request for judicial notice of certain documents and of a section of the Civil Code. With respect to the motion to strike, the court was correct that the demurrer was timely and within the mandated 15-page limit. (See Code Civ. Proc., § 471.5; Cal. Rules of Court, rule 3.1113.) In addition, the court had broad discretion to consider the demurrer even if untimely or excessively long. (See *Kapitanski v. Von's Grocery Co.* (1983) 146 Cal.App.3d 29, 32.) With respect to the request for judicial notice, Mejia has not shown that consideration of the matters as to which she requested judicial notice would have affected the outcome of the case. (See *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574 ["[a] judgment may not be reversed on appeal . . . unless 'after an examination of the entire cause, including the evidence,' it appears the error caused a 'miscarriage of justice.' [Citation.]"].)

[6]     A quiet title cause of action seeks to resolve competing claims to real or personal property. (Code Civ. Proc., § 760.020, subd. (a).) Cancellation of trustee's deed is

6

The elements of a wrongful foreclosure claim are: " '(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.' " (*Miles v. Deutsche Bank National Trust Co.* (2015) 236 Cal.App.4th 394, 408.)

With respect to the first element, Mejia's theory that the foreclosure sale was wrongful is based on allegations that (1) Bank of America failed to comply with the procedural requirements for the notice of the sale, (2) Bank of America had no authority to foreclose, and (3) the trustee's deed was void.

    a.    *Procedural Irregularities*

Mejia contends the trustee's sale was invalid due to the following procedural irregularities: (1) Bank of America failed to post notice of sale on the Property; (2) the notice of default prematurely listed Recon Trust as trustee before a substitution of this entity as trustee had been recorded; and (3) the notice of default identified BAC as the beneficiary before an assignment of the deed of trust to BAC had been recorded.[7]

"A nonjudicial foreclosure sale is accompanied by a common law presumption that it 'was conducted regularly and fairly.' [Citations.] This presumption may only be rebutted by substantial evidence of *prejudicial* procedural irregularity. [Citation.]" (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1258 (italics added).)

---

technically a remedy, not a cause of action. (See *Plastino v. Wells Fargo Bank* (N.D. Cal. 2010) 873 F.Supp.2d 1179, 1189.)

[7]    Mejia also contends that Bank of America sent her a "Notice to Accelerate" that "demanded" payment of an excessive amount. However, Mejia did not dispute that she defaulted on the loan or claim that the notice of default listed any incorrect amounts. Thus, this argument does not show that Bank of America failed to comply with the statutory procedural requirements for the notice of the sale. (See *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 104.) Although Mejia claims she *did* "dispute[] [Bank of America's] default allegations," her citations to the record do not support this.

With respect to Bank of America's alleged failure to post notice of the sale, Mejia has not shown prejudice because she allegedly "learn[ed] about the sale" in "January 2011" more than 20 days prior to the March 17, 2011 sale. (See Civ. Code, § 2924f(b)(1) ["notice of the sale thereof shall be given by posting a written notice of sale . . . at least 20 days before the date of sale"].)

As for the alleged premature substitution of Recon Trust, the FAC does not allege facts supporting this argument. The FAC alleges that the notice of default listed Recon Trust as "acting as an agent for the Beneficiary," not that Recon Trust was acting as trustee. (See Civ. Code, § 2924, subd. (a)(1) [notice of default may be filed by a "trustee, mortgagee, or beneficiary, or any of their authorized agents."].) Furthermore, "several statutory provisions contemplate that an entity may be substituted as trustee even where substitution is not 'recorded' or 'effected' until after the notice of default is recorded . . . ." (*Ram v. OneWest Bank, FSB* (2015) 234 Cal.App.4th 1, 12.) Mejia has also not alleged that she suffered any harm from this alleged error, i.e., that her ability to contest or avert the foreclosure was impaired.

Mejia also argues the notice of default was invalid because it identified BAC as the beneficiary before an assignment of deed of trust to BAC was recorded. Civil Code section 2924c, subdivision (b)(1), provides that a notice of default must identify the beneficiary or mortgagee as the proper person to contact "[t]o find out the amount you must pay, or to arrange for payment to stop the foreclosure . . . ." Here, the notice of default, which was issued before the assignment to BAC, identified BAC as the beneficiary or mortgagee, provided that Mejia could contact BAC at the listed address, and included the required statutory language quoted above. However, although the FAC alleges that no assignment of interest to BAC had yet been *recorded*, the FAC does not allege when HSBC *assigned* its interest in the deed of trust to BAC. Therefore, there are no allegations demonstrating that BAC was not, in fact, the beneficiary at the time the notice of default was issued. (See *Haynes v. EMC Mortgage Corp.* (2012) 205 Cal.App.4th 329, 332-336 [recordation is not required for the assignment of a beneficial interest in a deed of trust to be effective].) Nor has Mejia cited to any authority requiring

8

a beneficiary to record its beneficial interest in a deed of trust before initiating nonjudicial foreclosure proceedings. In *Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, the court rejected the plaintiff's argument that a notice of default was void when the beneficiary issued the notice before an assignment of the deed of trust to that entity had been recorded: " 'It has been established since 1908 that th[e] statutory requirement that an assignment of the beneficial interest in a debt secured by real property must be recorded in order for the assignee to exercise the power of sale applies only to the mortgage and *not to a deed of trust*.' " (*Id.* at p. 1497 (italics added).)

Mejia has also not shown that she suffered any prejudice as a result of the alleged error–i.e., that her ability to contest or avert the foreclosure was impaired. (See *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433 [holding that to state a wrongful foreclosure claim based on the failure to provide the correct beneficiary's name and contact information in the notice of default, the plaintiff must also show prejudice].)

b.      *Bank of America's Authority to Foreclose*

Mejia contends the foreclosure was wrongful because Bank of America lacked authority to foreclose on the property. Specifically, she contends that (1) Bank of America "failed to provide chain of title and ownership," (2) Bank of America "failed to prove BAC's authorization to sign on behalf of HSBC," and (3) Bank of America "fail[ed] to prove the sale was conducted by the lawful trustee and beneficiary." In essence, Mejia argues Bank of America did not "prove" a valid assignment of the deed of trust.

As stated above, "a nonjudicial foreclosure sale is presumed to have been conducted regularly, and the burden of proof rests with the party attempting to rebut this presumption. [Citations.]" (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 270.) Accordingly, it was not Bank of America's burden to "prove" the assignment was valid, but Mejia's burden to affirmatively plead facts rebutting the presumption of regularity and demonstrating Bank of America lacked authority to foreclose. (*Ibid.* ["Given the presumption of regularity, if plaintiff contended the sale was invalid because

9

the [foreclosing party] had no authority to conduct the sale, the burden rested with plaintiff affirmatively to plead facts demonstrating the impropriety."].)

Here, the only factual basis alleged in the FAC for Bank of America's lack of authority to foreclose was the variance in signatures on the recorded assignment of deed of trust transferring interest from HSBC to BAC. The FAC alleged the assignment was executed by Rudolf and notarized by Villavicencio, and those individuals' signatures were "different" on assignments recorded with respect to other properties.[8] In support of the argument that the assignment is invalid because of the variance in the signatures, Mejia relies on *Wolfe v. Lipsy* (1985) 163 Cal.App.3d 633. However, that case is inapposite because it dealt with a transfer of homesteaded property that was not executed by both spouses. (*Id.* at pp. 640-641.) Here, Mejia does not argue that the assignment lacked a required signature but rather vaguely contends the signatures are not "what they purport to be."[9]

        c.     *The Validity of the Trustee's Deed*

Mejia contends the trustee's deed is void because (1) Bank of America did not "perfect title" pursuant to Civil Code section 2924h, and (2) the trustee's deed did not

---

[8]     Mejia also contends the assignment does not include Rudolph's "title" in the certificate of acknowledgement as purportedly required by Civil Code section 1189. However, section 1189 requires the notary to set forth *his or her* "title" in the certificate of acknowledgement, not the title of the individual whose name is subscribed in the instrument. (See Civ. Code, § 1189, subd. (a)(3).) We also note that Rudolf's title, "assistant secretary," is listed next to his signature on the document.

[9]     Mejia also argues that she showed prejudice due to "robo-signing," but there are no allegations to this effect in the operative complaint. The term "robo-signing" refers to banks' practice "of signing large numbers of documents without checking that they are accurate, or by people who do not have the necessary authority." (Macmillan Dictionary, Macmillan Publishers Limited <http://www.macmillandictionary.com/dictionary/american/robosigning> [as of April 29, 2016].)

identify a "valid" purchaser because the move out agreements identified a different entity as the purchaser.[10]

Civil Code section 2924h provides that "the trustee's sale shall be deemed final upon the acceptance of the last and highest bid, and shall be deemed perfected as of 8 a.m. on the actual date of the sale if the trustee's deed is recorded within 15 calendar days after the sale . . . ." (Civ. Code, § 2924h, subd. (c).) Mejia contends that where, as here, the trustee's deed is not recorded within fifteen days following the sale, "no sale occurred" and "the [t]rustee's [d]eed is void."

In support of this argument, Mejia relies on *In re Garner* (Bankr. N.D. Cal. 1997) 208 B.R. 698, which she claims held "that the failure to perfect a sale by recording a trustee's deed within 15 days of the sale could <u>void</u> the sale." In fact, the *Garner* court stated that "section 2924h(c) provides that the sale is final when the highest and last bid is accepted" and "a failure to perfect the sale by recording the deed, either within or without the fifteen days, does not affect this finality." (*Id.* at p. 700.) The *Garner* court did *not* hold that a failure to record the trustee's deed within 15 days voids the trustee's deed, but only recognized that such a belated recording would permit a bankruptcy trustee to avoid the purchaser's interest under certain circumstances. (*Id.* at p. 701.)

With respect to the allegation that Bank of America "contradict[ed] itself in the move-out agreements and the trustee's deed as to which entity purchased at the foreclosure sale," Mejia contends this establishes that the trustee's deed is void because "[a] valid trustee's deed transferring property requires a grantee." However, these allegations do not show that the trustee's deed *lacked* a grantee–rather, the trustee's deed clearly set forth that Bank of America is the grantee. Accordingly, the allegations do not support Mejia's argument.

---

**10** Mejia also asserts an argument based on Code of Civil Procedure section 1161's "requirement to perfect title," but that statute does not apply here as it only applies to unlawful detainer actions. (See Code Civ. Proc., § 1161 [entitled "Unlawful detainer defined"].)

11

On all of these grounds, the FAC failed to allege facts showing Bank of America wrongfully foreclosed on Mejia's Property.[11]  Nor has Mejia shown that she could amend the defects in the FAC such that the court should have granted her leave to do so.  (See *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [plaintiff bears the burden of showing there is a reasonable possibility a defect in a complaint can be cured by amendment].)

3.      *The Tort Cause of Action*

The fourth cause of action alleges "tortious conduct," including negligence and intentional infliction of emotional distress.

a.      *Negligence*

Mejia argues the FAC adequately stated a cause of action for negligence on Bank of America's alleged mishandling of her application for a loan modification. "To state a cause of action for negligence, a plaintiff must allege (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries.  [Citation.]  Whether a duty of care exists is a question of law to be determined on a case-by-case basis.  [Citation.]" (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 62 (*Lueras*).)

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.  [Citations.]" (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096.)  A lender also does not owe a borrower a common law duty "to offer, consider or approve a loan modification . . . ." (*Lueras*, *supra*, 221 Cal.App.4th at p. 68.)  However, once a lender agrees to review a borrower's application to modify her loan, the lender owes a duty to exercise reasonable care in the review of the application.  (See *Alvarez v. BAC Home Loan Servicing, L.P.* (2014) 228 Cal.App.4th 941 (*Alvarez*).)

---

[11]      Because we conclude the FAC did not adequately allege facts showing an illegal sale of real property, we do not reach the arguments about whether Mejia " 'tendered the amount of the secured indebtedness or was excused from tendering.' " (*Miles v. Deutsche Bank National Trust Co.*, *supra*, 236 Cal.App.4th at p. 408.)

12

Here, Mejia contends Bank of America owed her a duty of care in processing her loan modification application. Bank of America contends it did not owe Mejia a duty because it acted within its conventional role as a lender of money.

Mejia cites to *Alvarez* in support of her argument that Bank of America owed her a duty of care. In *Alvarez*, the plaintiffs alleged negligence in the servicing of their residential mortgage loan. (*Alvarez*, *supra*, 228 Cal.App.4th at p. 943.) Specifically, they alleged the lender defendants breached their duty to exercise reasonable care in the review of their loan modification applications by (1) failing to timely review the applications, (2) foreclosing on the properties while the applications were under consideration, and (3) mishandling the applications by relying on incorrect information. (*Id.* at p. 945.) The *Alvarez* court held that once the defendants undertook to review the loan for a potential modification, they had a duty to timely and carefully process the applications and avoid mishandling them. (*Id.* at pp. 9480-951.) The court further held the plaintiffs had sufficiently alleged a cause of action for negligence by alleging the defendants' mishandling of the plaintiffs' applications prevented them from receiving loan modifications they were qualified to receive. (*Id.* at p. 951.)

Bank of America argues that, unlike the *Alvarez* plaintiffs, here, Mejia did not claim that Bank of America mishandled her application for a loan modification. Bank of America further contends that it "put Mejia's foreclosure on hold while considering whether to put Mejia on forbearance or loan modification. These were all actions that typically occur while negotiating a loan modification and, [thus,] Bank of America simply acted in its 'conventional role as lender of money.' "

Bank of America's characterization of the alleged facts is inaccurate. As explained below, the allegations here adequately assert that Bank of America mishandled Mejia's application for a loan modification. Moreover, Bank of America's argument focuses more on whether the FAC adequately alleged a breach, not a duty. *Alvarez* held that when a lender agrees to consider modification of a residential mortgage loan, it has a duty to exercise reasonable care in that review. (See also *MacDonald v. Wells Fargo Bank N.A.* (N.D. Cal. Apr. 24, 2015, No. 14-CV-04970-HSG) 2015 WL 1886000, at *5.)

13

[stating that "[f]ederal district courts applying California law after *Alvarez* overwhelmingly hold that the California Supreme Court would recognize a duty of care during the loan modification review process."].)  Here, Bank of America does not dispute that the FAC alleged it undertook review of Mejia's application for a loan modification.[12]  Therefore, the FAC adequately alleged facts stating a duty of care.

Bank of America's argument that Mejia does not allege facts sufficient to show that it breached its duty of care is unpersuasive.  The alleged facts suggest that Bank of America mishandled Mejia's application:  in response to Mejia's oral request for help with her default, Barber told Mejia her "file" would be "present[ed] . . . to the management committee" and Barber "was waiting to see whether Mejia would be put on forbearance or loan modification"; Barber then told Mejia her loan would be modified, but other Bank of America representatives later referred Mejia to a customer service line to get an application for a loan modification and then told Mejia she could no longer apply for a loan modification; Mejia was told no foreclosure sale date was set on the date Bank of America promised her a loan modification, but that same day, the trustee executed a notice of sale on the Property; Bank of America then foreclosed on the Property without informing Mejia of the outcome of its purported loan modification review.

These facts suggest either that Bank of America never reviewed Mejia's request for a loan modification, foreclosed while reviewing her modification request, or mishandled her request for a loan modification.  These circumstances are similar to *Alvarez* and are sufficient to allege a breach of the duty of care.

In addition, Bank of America's misrepresentations over an extended period of time deprived her of the opportunity to seek relief elsewhere.  (See FAC, ¶ 80 [Mejia "relied on the promises made by Bank of America and did not seek other opportunities to secure

---

[12]    Bank of America does not dispute that Mejia's oral request for help with the default and submission of her current financial information constituted an application for a loan modification.  The FAC certainly alleges facts showing that Bank of America treated this request as an application for a loan modification.

the Property, such as seeking a buyer for the property, or some other alternative"].) Accordingly, the FAC also adequately alleges facts showing causation and damages.[13] (See *Alvarez*, *supra*, 228 Cal.App.4th at p. 951 [causation and damages were adequately alleged where the plaintiffs alleged the defendant's mishandling of their loan modification applications "deprived them of the opportunity to seek relief elsewhere."].)

However, although the FAC as a whole adequately alleges facts in support of a negligence claim, the negligence cause of action itself is expressly based on Bank of America's alleged failure to follow "proper foreclosure procedures." "Leave to amend must be granted if 'there is a reasonable possibility that the defect can be cured by amendment.' [Citation.]" (*Lueras*, *supra*, 221 Cal.App.4th at p. 69.) Based on the record before us, it is clear that Mejia could amend the FAC to state a cause of action for negligence based on Bank of America's mishandling of her loan modification application. We therefore reverse the judgment as to this cause of action and remand to the trial court with directions to allow Mejia the opportunity to amend it.

### b. *Intentional Infliction of Emotional Distress*

Mejia asserts that the alleged mishandling of her application for a loan modification gave rise to a claim for intentional infliction of emotional distress. "The elements of a prima facie case for the tort of intentional infliction of emotional distress [(IIED)] are: ' "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. [Citation.]" ' [Citations.]" (*Melorich Builders, Inc. v. Superior Court* (1984) 160 Cal.App.3d 931, 935-936 (*Melorich*).)

---

[13] The parties were given the opportunity to file supplemental letter briefs on this issue. Both parties filed briefs and the panel read and considered them. The record does not support Bank of America's argument that "[u]nlike in *Alvarez*, here there are no allegations . . . Bank of America's conduct [] deprived Mejia of the opportunity to seek relief elsewhere."

"The standard set for measuring outrageous conduct indicates the qualifying conduct must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. [Citation.]" (*Melorich*, *supra*, 160 Cal.App.3d at p. 936.) Here, Bank of America's exercise of its right to foreclose on the Property after Mejia's default despite having made a promise to modify her loan does not amount to extreme and outrageous conduct as a matter of law. (See *Quinteros v. Aurora Loan Servs.* (E.D. Cal. 2010) 740 F.Supp.2d 1163, 1172 ["The act of foreclosing on a home (absent other circumstances) is not the kind of extreme conduct that supports an intentional infliction of emotional distress claim."].)

4.      *The Breach of Contract Cause of Action*

Mejia contends the trial court erred in holding the statute of frauds barred this claim. We conclude the alleged oral contract was not sufficiently certain to be enforceable and the statute of frauds applied to bar the breach of contract claim.

To state a cause of action for breach of contract, a plaintiff must allege "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." (*Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 830.)

The alleged contract here is Bank of America's promise to modify Mejia's loan "in three to fourth months." First, we note that a general promise to modify a loan, without any specified terms, is too uncertain to constitute an enforceable contract. (See *Spellman v. Dixon* (1967) 256 Cal.App.2d 1, 3 ["to enforce a contract at law, the offer must be sufficiently definite or must call for such definite terms in the acceptance, that the performance required is reasonably certain. [Citation.]"].)

Second, the trial court was correct that any oral contract to modify the loan was unenforceable for failure to comply with the statute of frauds. As codified in Civil Code section 1624, the statute of frauds provides that an agreement pertaining to "the sale of real property, or of an interest therein" is unenforceable unless it is memorialized in a writing subscribed by the party to be charged. (Civ. Code, § 1624, subd. (a)(3).) "A

16

mortgage or deed of trust is subject to the statute of frauds. [Citation.]" (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 416.) Furthermore, "[a]n agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds. [Citations.]" (*Secrest v. Security National Mortgage Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 553 (*Secrest*).) Accordingly, because a mortgage agreement or deed of trust is required to be in writing, an agreement for modification of the debt must also be in writing.

Mejia argues the alleged contract was not an agreement to modify the loan, but rather, akin to a Trial Period Plan whereby a bank guarantees a homeowner a loan modification *if* the homeowner makes timely payments under the plan, citing to *Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052 (*Chavez*). However, *Chavez* is of no assistance to Mejia. In *Chavez*, the court held that the lender's "Trial Period Plan" *expressly* stated that it did not modify the original loan documents and for that reason was not "subject to the statute of frauds." (*Id.* at p. 1062.) Here, unlike *Chavez*, there are no allegations that the agreement with Bank of America required Mejia to take certain actions as a condition to the bank agreeing to modify the loan–rather, Bank of America allegedly agreed to modify the loan without any further action by Mejia. The court in *Chavez* confirmed that "[a]n agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds," but held that, because of the lender's representations to the plaintiff and the plaintiff's performance in reliance thereon, the lender was estopped from asserting the statute of frauds. (*Id.* p. 1057.)

As the FAC failed to allege facts showing the existence of a valid contract or that the alleged contract complied with the statute of frauds, no cause of action for breach of contract was stated.

5.      *The Promissory Estoppel Cause of Action*

Mejia contends the trial court erred in holding the FAC did not allege facts showing a "clear and unambiguous promise" sufficient to support a claim for promissory estoppel. We disagree.

17

" ' "The elements of a promissory estoppel claim are '(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.' " ' [Citation.]" (*Aceves v. U.S. Bank, N.A.* (2011) 192 Cal.App.4th 218, 225 (*Aceves*).)

" 'The promise must . . . be "clear and unambiguous in its terms." ' [Citation.] 'To be enforceable, a promise need only be " 'definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.' " . . . It is only where " 'a supposed "contract" does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, [that] there is no contract.' " ' [Citation.]" (*Aceves*, *supra*, 192 Cal.App.4th at p. 226.)

Here, Bank of America's promise that "a loan modification to [*sic*] be completed in three to four months" is not clear and unambiguous in its terms. In fact, the terms of this alleged agreement−such as how the loan would be modified, whether the interest rate would be decreased or how much−are undefined. Thus, the agreement is too nebulous to allow the court to assess damages for its breach and cannot provide the basis for a promissory estoppel claim.

6.	*The Declaratory Relief Cause of Action*

To qualify for declaratory relief, a plaintiff must show: "(1) a proper subject of declaratory relief, and (2) an actual controversy involving justiciable questions relating to the rights or obligations of a party." (Code Civ. Proc., § 1060; *Brownfield v. Daniel Freeman Marina Hospital* (1989) 208 Cal.App.3d 405, 410.)

Here, the declaratory relief cause of action seeks a declaration that Bank of America wrongfully foreclosed on Mejia's property. On appeal, Mejia contends only that the FAC "sufficiently pleads a declaratory relief claim with an actual controversy." However, declaratory relief " 'operates prospectively, and not merely for the redress of past wrongs,' " and this cause of action seeks redress for a past wrong. (*Babb v. Superior*

*Court* (1971) 3 Cal.3d 841, 848.)  Accordingly, the FAC did not adequately set forth a cause of action for declaratory relief.

       7.     *The Injunctive Relief Cause of Action*

Injunctive relief is a remedy, not a cause of action.  (See *City of South Pasadena v. Department of Transportation* (1994) 29 Cal.App.4th 1280, 1293 [" 'A permanent injunction is merely a remedy for a proven cause of action.  It may not be issued if the underlying cause of action is not established.' "].)  Here, the injunctive relief cause of action is based on Mejia's wrongful foreclosure claims and seeks to restore title and possession of the Property to Mejia.  As the FAC failed to allege facts stating an underlying cause of action for wrongful foreclosure, the order sustaining the demurrer without leave to amend as to the claim for injunctive relief was proper.

## *DISPOSITION*

Mejia's requests for judicial notice are denied. The judgment is reversed as to the fourth cause of action for "tortious conduct" and the matter is remanded to the trial court with directions to grant Mejia leave to file an amended complaint. The judgment is affirmed in all other respects. In light of the mixed results here, the parties shall bear their own costs on appeal. (Cal. Rules of Court, Rule 8.278(a)(5).)


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.


We concur:


LAVIN, J.


HOGUE, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20